Marc Toberoff (CA State Bar No. 188547)
Rafael Gomez-Cabrera (CA State Bar No. 229744)
Jeffrey B. Linden (CA State Bar No. 224761)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

**ORIGINAL**

Attorneys for Plaintiffs
Joanne Siegel and Laura Siegel Larson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC, a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Civil Case No. 04-08776-RSWL(AJWx) <br><br> **COMPLAINT FOR:** <br><br> [1] DECLARATORY RELIEF RE: TERMINATION, 17 U.S.C.§304(c); <br> [2] VIOLATION OF LANHAM ACT 15 U.S.C. § 1125; <br> [3] VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONAL CODE §§ 17200 *ET SEQ.;* and <br> [4] INJUNCTIVE RELIEF <br><br> DEMAND FOR JURY TRIAL |

DOCKETED ON CM

OCT 28 2004

BY _____ 001

Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by and through their attorney of record, hereby allege as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action seeking declaratory relief and remedies for violations of the Lanham Act and violations of the California unfair competition laws arising out of Plaintiffs' termination of prior grants of copyright in and to the original character and work created by Jerome Siegel known as "Superboy" and subsequent "Superboy" works pursuant to

---

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

the United States Copyright Act of 1976, 17 U.S.C. § 304(c), and defendants' willful misconduct with respect thereto.

2.    This Court has original subject matter jurisdiction over the claims set forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 *et al.* and 28 U.S.C. §§ 1331, 1338(a) and 1332 .

3.    This Court has supplemental jurisdiction over the related state claims herein in that these claims form part of the same case and controversy as the federal claims herein.

4.    This Court has personal jurisdiction over the defendants in that defendants are regularly doing business in the State of California and in this District, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and this District.

5.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the unfair competition and other wrongful acts that give rise to the claims herein below occurred in this district and because WARNER BROS. ENTERTAINMENT INC. and WARNER BROS.TELEVISION INC. have their principal places of business in this district.

## PARTIES

6.    Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an individual and citizen of, and resides in, the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States.  Joanne Siegel is the widow of famed comic book creator Jerome (a.k.a. "Jerry") Siegel.

7.    Plaintiff LAURA SIEGEL LARSON (hereinafter "Laura Siegel") is an individual and a citizen of, and resides in, the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States.  Laura Siegel is the daughter of Jerome Siegel.

8.    Plaintiffs are informed and believe and based thereon allege that defendant WARNER COMMUNICATIONS INC. (hereinafter "WCI") is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in

2

the State of New York; that WCI is the general partner of the Defendant DC Comics partnership; and that WCI is a wholly owned subsidiary of Defendant TIME WARNER INC.

9. Plaintiffs are informed and believe and based thereon allege that defendant WARNER BROS. ENTERTAINMENT INC. (hereinafter "Warner Bros.") is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in Los Angeles County, California; and that Warner Bros. is a wholly owned subsidiary of Defendant TIME WARNER INC.

10. Plaintiffs are informed and believe and based thereon allege that defendant WARNER BROS. TELEVISION INC. (hereinafter "WBTV") is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in Los Angeles County, California; and that WBTV is a wholly owned subsidiary of Defendant Warner Bros.

11. Plaintiffs are informed and believe and based thereon allege that Defendant DC COMICS INC. (hereinafter "DC") is a general partnership organized and existing under the laws of the State of New York, which has its principal place of business in the State of New York; that DC regularly conducts significant business in the State of California and in the County of Los Angeles; that DC is wholly co-owned by Warner Bros. and WCI, but Warner Bros. exercises day to day *de facto* control over DC.

12. Plaintiffs are informed and believe and based thereon allege that on or about September 30, 1946, the New York corporations, Detective Comics, Inc., Superman, Inc., All American Comics, Inc., Jolaine Publications, Inc., Wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc., Gainlee Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc. and Trafalgar Printing Co., Inc. were consolidated into the New York corporation National Comics Publications, Inc., the name of which was later changed to National Periodical Publications, Inc., and eventually to DC Comics; and further that DC, Warner Bros. and Time Warner, and/or each of them, are the alleged successor(s)-in-interest to National Periodical Publications, Inc.

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

13.    Plaintiffs are informed and believe and based thereon allege that Defendant TIME WARNER INC. (hereinafter "Time Warner") is a corporation organized and existing under the laws of the State of Delaware, which has its corporate headquarters in the State of New York, and that Time Warner regularly conducts significant ongoing business in the State of California and in the County of Los Angeles. Time Warner is the parent company of WCI, Warner Bros., WBTV and DC. (Time Warner, WCI, Warner Bros., WBTV and DC are sometimes collectively referred to hereinafter as the "Defendants;" and each reference to Defendants shall also refer to each Defendant).

14.    Plaintiffs are informed and believe and based thereon allege that Defendant DC never, or rarely, exploits "Superboy," independently of its controlling parent company, Warner Bros.; that even relatively linear functions such as "Superboy" licensing are not handled directly by DC, but are exploited exclusively through Warner Bros.; that the agreements and other arrangements between Defendants WCI, Warner Bros., WBTV and DC regarding "Superboy" are not "arm's length" agreements, serve primarily Warner Bros.' and WBTV'S interests, and thus, do not reflect the appropriate market values of the copyrights to "Superboy," at issue herein.

15.    Plaintiffs are informed and believe and based thereon allege that Defendants Time Warner, WCI, Warner Bros., WBTV and DC are, and at all times material hereto were, the alter-egos of each other and there exists and has existed at all times material hereto a unity of interest and ownership among such Defendants such that any separateness has ceased to exist in that Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and caused valuable assets, property, rights and/or interests to be transferred to each other without adequate consideration.

16.    Plaintiffs are informed and believe and based thereon allege that the fictitiously named Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein.  The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are

4

presently unknown to Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to a named Defendant shall also refer to the Doe Defendants and each of them.

17. Plaintiffs are informed and believe and based thereon allege that each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, and that at all times herein mentioned, each of the Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Defendants is jointly and severally responsible for the damages hereinafter alleged.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

18. In or about 1938, Jerome Siegel conceived of a new comic strip series entitled "Superboy." On November 30, 1938 submitted to Detective Comics for its consideration, and its acceptance or rejection for publication, a written summary of the character, conception and plan for his "Superboy" comic strip series, which Mr. Siegel suggested could run in Detective Comics' magazines, "More Fun Comics" or "New Adventure Comics."

19. By letter dated December 2, 1938, Detective Comics rejected and did not elect to publish Mr. Siegel's "SUPERBOY" character and concept.

20. At the time, Detective Comics was publishing the now famous "Superman" comic books written by Jerome Siegel and drawn by artist, Joseph Shuster (hereinafter, "Siegel and Shuster"). "Superman" had been originally conceived by Mr. Siegel in or about 1933.

21. Plaintiffs are informed and believe and thereon allege that at all times relevant to the within action Jerome Siegel acted as an independent contractor and not as a traditional employee of Detective Comics; that, without limitation, Mr. Siegel was not paid a salary, but was consistently paid on a "per page" basis, and only for materials actually delivered by him and published. Plaintiffs are further informed and believe and thereon allege that in compensating Mr. Siegel, Detective Comics did not withhold or deduct payroll, social security and other taxes normally deducted from employee salaries; Detective Comics did not provide

employee benefits to Mr. Siegel; Mr. Siegel worked from his own premises (not Detective Comics' premises); determined his own hours and days of work; supplied, used and paid for his own instrumentalities, tools and materials; and hired and paid for his own assistants.

22. On or about December, 1940, Jerome Siegel, on his own, authored a complete original "Superboy" story (hereinafter referred to as the "Siegel Superboy Story"). The Siegel Superboy Story together with all other material created by Jerome Siegel relating to "SUPERBOY" is hereinafter sometimes referred to as the "Siegel Superboy Material."

23. The Siegel Superboy Material contained in detail and with particularity the unique conception and character of "Superboy," the continuity and dialogue for the first "release" or "releases" of "Superboy," and the plan for the future publication of a "Superboy" comic book series.

24. No other person, nor entity, aside from Jerome Siegel, nor entity, authored or contributed to the Siegel Superboy Material.

25. The Siegel Superboy Material sets forth the following: "Superboy's" character, origins, family and social life as a youth growing up in a small-town in the rural American heartland; while grappling with the challenges of growing up, "Superboy" must face the challenges and responsibilities of his extraordinary strength and developing powers and of concealing that he is very different from others; "Superboy" is raised in his small town by foster parents, the "Kents," humble, moral people who are sensitive to their "son's" uniqueness, keep his secret and gently guide him; after describing "Superboy's" origins and his antics as a baby who is taught by the Kents to restrain or conceal his tremendous strength, Mr. Siegel's "Superboy" series starts with the youth at age eleven or twelve, while he attends junior high school in the hometown where his crime fighting adventures take place; "Superboy" protects his small town and its inhabitants, including his classmates, from accidents and evil doers; "Superboy's" central dilemma, while facing adolescence, school cliques, bullies and "bad guys" alike is to conceal his true self while using his great powers to help those in need.

6

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

26.    By comparison, in Action Comics No. 1, where "Superman" debuted in 1938, we see "Superman" as an infant in only one panel on page one. By the next panel on page one he has already become an adult with fully developed superpowers.

27.    On or about December, 1940, Mr. Siegel submitted the Siegel Superboy Story to Detective Comics for its further consideration; however, Detective Comics continued to reject and did not elect to publish the "Superboy" comic book series.

28.    Thereafter, by letters dated February 6, 1941, July 1, 1941 and January 1, 1942, Jerome Siegel again wrote to Detective Comics in an attempt to pique their interest in his new "Superboy" comic book series.

29.    Detective Comics, however, consistently purported to reject Mr. Siegel's proposals and material regarding a new "Superboy" comic book series.

30.    Jerome Siegel entered the U.S. Army in July 1943 to serve his country during World War II.

31.    While Mr. Siegel was stationed in the Pacific, Detective Comics, without notice to Jerome Siegel and without his consent, illegally used and published the Siegel Superboy Material as an illustrated comic book story in the body of the January-February, 1945 issue of More Fun Comics, No. 101, which was published and issued for sale on November 18, 1944. The copyright to More Fun Comics No. 101 was renewed on July 17, 1972, in the name of Detective Comics' successor, National Periodical Publications, Inc., claiming as proprietor of copyright.

32.    Defendant DC states in its book, DC Comics: A Celebration of the World's Favorite Comic Book Heroes, Copyright 1995, 2003 DC Comics: "MORE FUN COMICS # 101 [incorporating the Siegel Superboy Material] ...la[id] the groundwork for countless stories and new directions to come. Superboy's learning experiences and the gentle guidance of Ma and Pa Kent become important touchstones in the character's development..."

33.    In or about 1947, Siegel and Shuster filed an action in the Supreme Court of the State of New York, County of Westchester against National Comics Publications, Inc. (hereinafter, the "1947 Action") to determine the origin and ownership of "Superboy;" and to

7

determine the validity of various "Superman" contracts between Siegel and Shuster and National Comics Publications, Inc.'s predecessors–in–interest (including Detective Comics). Pursuant to stipulation of the parties the action was referred for decision to an official referee of the New York Supreme Court (hereinafter, the "Official Referee").  After trial of the action the Official Referee rendered an opinion dated November 1, 1947.  On April 12, 1948, the Official Referee signed detailed findings of fact and conclusions of law and entered an interlocutory judgment. The Official Referee found that Jerome Siegel was the originator and sole owner of the comic strip feature, "Superboy." None of said parties perfected an appeal of the Official Referee's opinion, findings of fact and conclusions of law.  Settlement negotiations ensued, resulting in a stipulation of settlement between said parties executed on or about May 19, 1948 (hereinafter, the "1948 Stipulation"), and the entry in the New York Supreme Court of a final consent judgment dated May 21, 1948.

34.    In the 1947 Action, the Official Referee found, after reviewing considerable documentary and testimonial evidence regarding "Superboy" (and Plaintiffs reiterate and allege herein): (i) that the original "Superboy" material created solely by Jerome Siegel contained with detail and particularity the continuity, plan and dialogue for the first "release" or "releases" of "Superboy", the conception and character of "Superboy" and the entire plan for the future publication of "Superboy"; (ii) that all of the comic strip material published under the title "Superboy" by Detective Comics and later by its successor, National Comics Publications, Inc., up until trial of the 1947 Action, on or about April 12, 1948, copied, embodied and was based upon the conception, expression, plan and direction contained in Jerome Siegel's original November 30, 1938 letter to Detective Comics and in the Siegel Superboy Story, solely created by Jerome Siegel; (iii) that "Superman" did not contain the plan, scheme or conception of Jerome Siegel's comic strip, "Superboy" and that "Superboy" was a work different and distinct from "Superman"; (iv) that the publication of all such comic strip material entitled "Superboy" by Detective Comics was at all times illegal and without the permission of Jerome Siegel; and (v) that Jerome Siegel, was the originator and sole owner of the comic strip feature, "Superboy," and had the sole and exclusive right to create, sell and

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

distribute comic strip material under the title "Superboy," of the type and nature published by Detective Comics.

35. Subsequent to these court findings, Mr. Siegel assigned rights in "Superboy" to National Periodical Publications, Inc in the 1948 Stipulation.

36. In <u>Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et al.</u>, 509 F.2d 909 (2nd Cir., 1974) the Second Circuit held that the Official Referee's findings of fact and conclusions of law in the 1947 Action, to which no appeals were taken, are binding on the parties under the doctrine of *res judicata*.

37. "Superboy's" small town adventures were published in "More Fun Comics," Nos. 101-107 (1944-1945), "Adventure Comics" Nos. 103-503 (1946-1983), "Superboy" Nos. 1-235 (1949-1977), "The New Adventures of Superboy" Nos. 1-54 (1979-1984), and another series of comics entitled "Superboy" (sometimes also known as "The Adventures of Superboy") Nos. 1-100 (1989-2002), which were published at regular intervals and in numerous other comic book publications (these series of comic books featuring "Superboy" are hereinafter sometimes referred to, in whole or in part, as the "Superboy Comic Books"). "Superboy" has also been exploited in several television series, including the animated "The Adventures of Superboy" (1966), the live action series "The Adventures of Superboy" (1988-1992) and "Smallville" (2001-ongoing) and in considerable merchandising over the years.

38. The aforesaid Superboy Comic Books, television programs and merchandising are substantially similar to and derivative of the Siegel Superboy Material.

39. As originally conceived by Jerome Siegel, "Superboy" was to naturally mature from an eleven or twelve year old in junior high school to a teenager in high school. Mr. Siegel wrote in the Siegel Superboy Story: "And so was launched the career of SUPERBOY, youthful Champion of Righteousness! In later years he was to become the mighty figure known as Superman! But the story of SUPERBOY'S amazing and often humorous adventures is a series of astonishing narratives in itself!" The adventures were to take place in the same small rural American town in which he grew up with his foster parents, the Kents. This fictional town was named "Smallville" early on in "Superboy No. 2.," published in 1949.

9

In the Superboy Comic Books and in the animated and live action "The Adventures of Superboy" television series, "Superboy's" crime fighting adventures, throughout the years, for the most part have taken place in "Smallville," the hometown he protects. For more than 50 years in this large body of published and broadcast material and thus, in the public's mind, the town of "Smallville" has been associated with "Superboy."

40.    Defendant WBTV's television series, "Smallville" (hereinafter referred to as the "Smallville Series") which debuted in October, 2001 and is currently in its fourth season is derivative of the Siegel Superboy Material. The Smallville Series is set in "Superboy's" small rural hometown from which the series takes its name. The Smallville Series focuses on a youth with extraordinary powers raised in the American heartland, who, while grappling with the challenges of growing up, must face the responsibilities of his emerging powers and conceal that he is very different from others.  Like the Siegel Superboy Material, the Smallville Series follows the anonymous crime fighting adventures of its superhero in the small town he protects, while examining the character's social and family life. In the Smallville Series, as in the Siegel Superboy Story, the main character is raised by his humble, earnest and understanding foster parents, the Kents, who keep his secret and to whom he turns for guidance as he faces daily challenges due to his differences/superpowers of which he gradually becomes aware.  Warner Bros.' own marketing materials for the Smallville Series state: "Between the boy Clark Kent thought he was and the man he is destined to become lie the compelling stories of 'Smallville'" -- a premise and expression derivative of the Siegel Superboy Materials.

41.    The Siegel Superboy Story and the Siegel Superboy Material are wholly original with author Jerome Siegel and constitute copyrightable subject matter under the laws of the United States.

42.    The Siegel Superboy Material was published in the serialized magazine, More Fun Comics, No. 101, for which copyright was secured on November 23, 1944 with the Register of Copyrights under copyright registration number B653651 and renewed on July 17, 1972 in the name of National Periodicals Publications, claiming as proprietor of copyright,

10

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

under copyright renewal registration number R532582. The Siegel Superboy Material was also published in subsequent "Superboy" publications for which copyright was secured through registration with the United States Register of Copyrights prior to November 17, 1948; and renewed with the Register of Copyrights.

43.    Jerome Siegel was the sole proprietor of all right, title and interest in and to the copyrights in the Siegel Superboy Material prior to granting rights in "Superboy" to National Comics Publications, Inc. in the 1948 Stipulation.

44.    As the sole proprietor of such copyrights, Jerome Siegel had the exclusive right to, among other things, prepare or authorize the preparation of derivative works based on the Siegel Superboy Material.

45.    The main character, conception, story, continuity and other elements in More Fun Comics No. 101 and subsequent Superboy Comic Books and television programs, including the Smallville Series are substantially similar to the protected expression in the Siegel Superboy Story and Siegel Superboy Material.

46.    On November 8, 2002, Plaintiffs, Joanne Siegel and Laura Siegel, served by first class mail and by certified mail, return receipt requested, both postage prepaid, a notice of termination, as permitted by the Copyright Act, 17 U.S.C. § 304 (c) (hereinafter, the "Termination Notice") on each of the Defendants and a number of their subsidiaries, licensees and affiliates, which terminates, effective November 17, 2004 (hereinafter, the "Termination Date"), Jerome Siegel's alleged grant in the 1948 Stipulation (and in any other alleged prior grants) of the renewal copyrights to the "Superboy" character(s), conceptions, stories, continuity, setting, themes and other copyrightable "Superboy" element or aspects originally created and owned by Jerome Siegel (hereinafter sometimes referred to collectively as the "Recaptured Copyrights"). The Termination Notice was duly recorded with the Library of Congress and the United States Copyright Office.

47.    The Siegel Superboy Material was published in (i) More Fun Comics Nos. 101 -107 (statutory copyright to More Fun Comics No. 107 was secured on November 20, 1945), (ii) Adventure Comics No. 103-135 (statutory copyright to Adventure Comics No. 135 was

11

secured on October 20, 1948) and (iii) subsequent works involving "Superboy," all for which copyright was registered and renewed with the United States Register of Copyrights, as set forth in the Notice of Termination.

48.     The Notice of Termination was drafted, served on Defendants and filed with the United States Copyright Office, all in full compliance with the Copyright Act, 17 U.S.C. 304(c), and the regulations promulgated thereunder by the United States Register of Copyrights, 37 C.F.R. § 201.10 (2003). (Plaintiffs' aforesaid exercise of their termination rights under 17 U.S.C. § 304(c) regarding "Superboy" is sometimes hereinafter referred to as the "Termination").

49.     As the sole creator and author of "Superboy," Jerome Siegel owned all rights in "Superboy," including the copyrights to "Superboy" prior to the alleged transfer or assignment of "Superboy" pursuant to the 1948 Stipulation.

50.     The Notices of Termination terminate on November 17, 2004 (hereinafter, the "Termination Date") all prior grants or purported grants of the renewal copyrights in and to "Superboy" for the extended renewal term (hereinafter, sometimes referred to individually and collectively as the "Recaptured Copyrights"), including all such grants in the 1948 Stipulation.

51.     On November 17, 2004, the Termination Date, Plaintiffs will recover ownership to the Recaptured Copyrights for their extended renewal terms.  In accordance with 17 U.S.C. 304(c), and as set forth in the Notice of Termination, Jerome Siegel's surviving son, Michael Siegel, is also entitled to share in the proceeds from this recaptured interest.

52.     Notwithstanding the clear findings of fact in the 1947 Action that Jerome Siegel had solely created "Superboy," Defendants continue to publicly distribute false and misleading representations as to the origins and creation of "Superboy."

53.     For instance, in Defendant DC's book alleged hereinabove, DC Comics: A Celebration of the World's Favorite Comic Book Heroes, *supra*, DC states "Editor Jack Schiff is credited with the original suggestion for the "Superboy" series…The initial scripts were by writer Don Cameron…One reader who didn't care for "Superboy" was another returning

12

soldier, Jerry Siegel…" In the introduction to Defendant DC's November 2000 reprint of More Fun Comics No. 101 in which "Superboy" made his first appearance in 1944, DC gives the following credit: " 'Superboy' Story by Unknown," even though it had been held in the 1947 Action that the "Superboy" story appearing in More Fun Comics No. 101 was directly "lifted" from the Siegel Superboy Story.

54. On August 27, 2004, over twenty-one months after the Termination Notice had been served on Defendants, Defendant DC, by its attorneys (Fross Zelnick, *et al*) sent a letter to the Plaintiffs' attorneys of record (hereinafter the "August 27, 2004 Letter"), stating in relevant part:

"DC Comics hereby rejects the Superboy Notice [of Termination] to the extent it seeks to terminate any matter beyond such novel plot and dialogue additions, to the extent copyrightable, that may exist in Superboy based upon the script and scenario submitted by Mr. Siegel to DC in 1940."

55. Nonetheless, DC asserts in its August 27, 2004 Letter:

"DC Comics will vigorously oppose any attempt by Mrs. Siegel and Mrs. Siegel Larson…to exploit or authorize the exploitation of any copyrights, or indeed any rights at all, based on the Superboy Notice [of Termination]."

56. Defendants further indicate in the August 27, 2004 Letter that, notwithstanding the Termination, DC and its licensees, including but not limited to Warner Bros. and Time Warner, will, after the Termination Date, continue to prepare, produce, copy, distribute and exploit new episodes of the derivative Smallville Series, in addition to other new "Superboy" works.

57. Defendants also state in the August 27, 2004 Letter that if Plaintiffs continue to assert their rights in "Superboy" under the Copyright Act, Defendants may take away Plaintiff Joanne Siegel's widow's pension and medical benefits on which the elderly Mrs. Siegel heavily relies, even though such benefits are payable pursuant to a written agreement between

13

---

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

Defendant WCI and Siegel and Shuster, dated December 23, 1975, which had nothing to do with the "Superboy" Termination:

"This letter… is written without prejudice to any of our client's rights or remedies, including with respect to the parties' continuing rights and obligations under their agreements providing, among other things, compensation and other benefits to Mrs. Siegel…"

58.    Defendant DC's August 27, 2004 Letter constitutes a thinly veiled threat that if Plaintiffs persist with the assertion of their statutory rights under the Copyright Act, 17 U.S.C. § 304(c) and/or attempt to exploit *any* of their Recaptured Copyrights in "Superboy," Defendants would launch a campaign of intimidation, including, but not limited to, withholding widow's pension and medical benefits that Defendants had promised in writing to provide to Joanne Siegel, instituting retaliatory litigation against Plaintiffs; and wielding Defendants' enormous market power to constrict Plaintiffs' ability to exploit their Recaptured Copyrights.  Given that Time Warner is one of the largest media companies in the world, with over $38 billion in annual revenues, Defendants' threats wrongfully encumbered and will continue to encumber the bona fide copyright interests that Plaintiffs regain on November 17, 2004 under 17 U.S.C. § 304 (c).

59.    Plaintiffs are informed and believe by Defendants' conduct, including the August 27, 2004 Letter, and based thereon allege that Defendants will continue after the Termination Date to prepare, produce, copy, distribute or exploit, and/or authorize others to prepare, produce, copy, distribute or exploit, new derivative works which copy and are based on the Siegel Superboy Material in violation of the Copyright Act.

60.    As a direct and proximate result of Defendants' actions Plaintiffs will suffer imminent and irreparable harm and damages, much of which cannot be reasonably or adequately measured or compensated in damages.

/ / / /

/ / / /

14

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

## **FIRST CLAIM FOR RELIEF**

(Declaratory Relief Re: Termination, 17 U.S.C. § 304(c) - Against All Defendants)

61.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60 inclusive, as though fully set forth herein.

62.    By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants under Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective rights and interests in and to the copyrights to "Superboy," for which Plaintiffs desires a declaration of rights.

63.    Plaintiffs contend and Defendants deny that:

a.    Jerome Siegel was the sole proprietor of the copyright(s) in and to the unique character and literary conception of "Superboy," prior to his granting rights in "Superboy" to National Comics Publications, Inc. in the 1948 Stipulation;

b.    As of the effective Termination Date, November 17, 2004, the Notice of Termination will terminate any prior grant(s) by Jerome Siegel of his wholly owned copyrights in and to "Superboy," for the copyrights' extended renewal term, to any of the Defendants, their predecessors-in-interest and additional parties served with the Notices of Termination, including, but not limited to, such grant(s) in the 1948 Stipulation;

c.    As of November 17, 2004, Plaintiffs will own all right, title and interest in and to the Recaptured Copyrights to "Superboy" for their extended renewal terms;

d.    The Superboy Comic Books, the "Superboy" merchandising, animated and live action television programming, including the Smallville Series, copy and are derivative of the Siegel Superboy Material and Recaptured Copyrights;

e.    The preparation, production, reproduction, distribution and/or exploitation, by Defendants, their licensees and/or assigns of new derivative works or products based on the "Superboy" mythology, including, but not limited to, new publications, merchandising, motion pictures, new episodes of the Smallville Series and/or other new derivative television programs, will infringe upon Plaintiff's Recaptured Copyrights;

15

f.    By reason of the foregoing, Defendants, their employees, agents, licensees, assigns, and/or any persons acting in concert with any of them, are prohibited on and after the Termination Date from preparing, producing, copying, distributing or exploiting, and from authorizing others to prepare, produce, copy, distribute or exploit, new derivative works or products which are based on the "Superboy" mythology, including, but not limited to, publications, merchandising, motion pictures, new episodes of the Smallville Series and/or other derivative television programs;

g.    By reason of the foregoing, Plaintiffs are entitled to an accounting by the Defendants, jointly and severally, of any and all proceeds, compensation, monies, profits, gains and advantages attributable, in whole or in part, to the unauthorized exploitation after the Termination Date, during the pendency of this action and thereafter, of the "Superboy" mythology, excluding proceeds from the exploitation of derivative works produced prior to the Termination Date (hereinafter referred to as "Proceeds");

h.    Plaintiffs are entitled to the restitution of all such Proceeds; and

i.    By reason of the foregoing and Defendants' resultant unjust enrichment, Plaintiffs are entitled to the imposition of a constructive trust for the benefit of Plaintiffs on all such Proceeds.

64.    A declaration of the Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their respective rights and obligations with respect to the Termination and the copyright interests thereby recaptured by Plaintiffs.

## SECOND CLAIM FOR RELIEF

(Violation of the Lanham Act § 43(a), 15 U.S.C. § 1125, Unfair Competition –
Against All Defendants)

65.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64 inclusive, as though fully set forth herein.

66.    Plaintiffs are informed and believe and thereon allege that, notwithstanding the binding findings of fact and conclusions of law of the Official Referee in the 1947 Action,

16

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

Defendants have and continue to willfully misrepresent in its commercial advertising and promotional materials the nature of "Superboy's" creation by failing to properly attribute "Superboy" to Jerome Siegel and/or falsely attributing "Superboy's" creation to themselves or their predecessors, all with an intention to mislead and misrepresent the nature, characteristics and qualities of Defendants' goods, services or commercial activities. Such misrepresentations are particularly harmful to comic book fans who care deeply about the creators of their favorite "superheroes." In the comic book world, the comic book's creator is closely tied in the public's mind to the nature, value, quality and other characteristics of the comic book itself, and of derivative products.

67. As a result of such false and misleading designation, marketing and advertising, members of the public, who read "Superboy" comic books, watch derivative television programming, purchase derivative merchandising, view Defendants' Internet sites and other advertising and promotional materials, are likely to be confused about the nature, characteristics and qualities of the "Superboy" products they are consuming.

68. Plaintiffs are informed and believe and thereon allege that Defendants DC, Warner Bros., WBTV, WCI and Time Warner, after and notwithstanding their service with the Termination Notice and the binding findings of fact and conclusions in the 1947 Action, falsely represented to third parties that Defendants own all rights to "Superboy" for their full duration and willfully omitted disclosure of the Termination Notice to such third parties, and that based upon such false claims, representations and omissions have induced such third parties to enter into agreements with them, including but not limited to agreements to license, develop, and produce new derivative "Superboy" works after November 17, 2004.

69. Plaintiffs are informed and believe and thereon allege that Defendants used such misrepresentations and omissions in interstate commerce in order to induce others to enter into contracts or other forms of business arrangements with Defendants. Such actions constitute the use of false description or representation in interstate commerce, likely to cause confusion, mistake or to deceive and is in opposition to the protection of the public interest.

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

70. Defendants will likely continue to misrepresent "Superboy" to be the sole property of Defendants after November 17, 2004, thus wrongfully misappropriating and encumbering Plaintiffs' rights to the use and enjoyment of their intellectual property and the goodwill attendant thereto, and resulting in likely confusion of and a fraud on the public.

71. As a direct and proximate cause of Defendants' unfair trade practices and unfair competition, Plaintiffs have suffered and will continue to suffer severe injuries and damages, much of which cannot be reasonably or adequately measured or compensated in damages if such wrongful conduct is allowed to continue unabated. The ongoing harm this wrongful conduct will continue to cause Plaintiffs is both imminent and irreparable. Plaintiffs' injuries and damages include, but are not limited to loss of customers, dilution of goodwill, injury to their business reputation, and diminution of the value of their soon to be recaptured intellectual property.

72. By reason of the foregoing, Defendants have violated and continue to violate the Lanham Act, 15 U.S.C. §§ 1117 and 1125.

73. Plaintiffs are entitled to an injunction, during the pendency of this action, and permanently (i) enjoining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in such further violations of the Lanham Act, 15 U.S.C. §§ 1117 and 1125; and (ii) requiring Defendants, their licensees, assigns and all persons acting in concert with them, to properly designate Jerome Siegel on "Superboy" products, advertising and promotional materials as the creator of "Superboy."

74. Plaintiffs have no adequate remedy at law with respect to these ongoing violations.

75. Plaintiffs are further entitled to recover from Defendants the damages, including attorneys' fees and costs, it sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts and omissions alleged hereinabove, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

18

76.    Plaintiffs are informed and believe and thereon allege that Defendants' wrongful conduct, acts and omissions were conducted in an intentional, callous, and calculated manner in conscious disregard for Plaintiffs' rights, health and feelings, and knowingly and intentionally injured and damaged Plaintiffs, which conduct constituted oppression and malice as defined by California Civil Code § 3294.  In accordance with California Civil Code § 3294, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants DC, Warner Bros., WBTV, WCI and Time Warner, to be assessed at trial.

## THIRD CLAIM FOR RELIEF

(Violation of California Business and Professions Code, §§ 17200 *et seq.*

(Unfair Competition) - Against All Defendants)

77.    Plaintiffs re-allege and incorporate herein by reference the allegations set forth in paragraphs 1 through 76, inclusive, as though fully set forth herein.

78.    In addition to the wrongful acts and omissions alleged hereinabove and incorporated herein, Plaintiffs are informed and believe that being served with the Termination Notice, Defendant Warner Bros.' and its parent, Defendant Time Warner, have intentionally omitted from Time Warner's Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and other publicly reported documents any and all mention of the Termination, even though the Termination drastically curtails Defendants' ability to continue to exploit "Superboy" -- one of their more valuable intellectual properties. Such systematic public misrepresentations by omission are likely to deceive, cause confusion and mistake and run counter to the public interest.

79.    In addition to the wrongful acts and omissions alleged hereinabove and incorporated herein, Defendants wrongful conduct amounts to the bodily appropriation of the Siegel Superboy Material and to "reverse passing off," depriving Plaintiffs of the full use and value of the "Superboy" property and of attendant goodwill, and resulting in likely confusion of and a fraud on the public. Defendants, unless restrained, will likely continue to

19

misrepresent and pass off "Superboy" to be their sole property and creation after November 17, 2004.

80.    Plaintiffs are further informed and believe and thereon allege that Defendants attempts to pass off "Superboy" as Defendants' sole property for a much longer duration than Defendants control the property is calculated to deceive Plaintiffs' potential licensors and/or customers and members of the public.

81.    Defendants' wrongful conduct, acts, and omissions alleged hereinabove constitute unlawful, unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and under the common law.

82.    As a direct and proximate result of Defendants' conduct, acts, and omissions as alleged hereinabove, Plaintiffs are entitled to recover their share of any income, gains, compensation, profits and advantages obtained, received or to be received by Defendants, or any of them, arising from the exploitation after the Termination Date of any element of the "Superboy" mythology protected by the Recaptured Copyrights, excluding derivative works produced prior to the Termination Date; and are entitled to an order requiring Defendants, jointly and severally, to render an accounting to ascertain the amount of such proceeds.

83.    As a direct and proximate result of Defendants' wrongful conduct, acts and omissions pleaded hereinabove, Plaintiffs have been damaged, and Defendants will be unjustly enriched during the pendency of this action, in an amount that shall be assessed at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are jointly and severally the constructive trustee for the benefit of Plaintiffs and an order that Defendants convey to Plaintiffs all Proceeds received by Defendants that are attributable to the wrongful exploitation of "Superboy," excluding derivative works produced prior to the Termination Date.

84.    Defendants' wrongful conduct, acts and omissions have proximately caused and will continue to cause Plaintiffs substantial injury and damage including, without limitation, loss of customers, dilution of goodwill, injury to Plaintiffs' reputation, and

20

diminution of the value of Plaintiffs' imminent Recaptured Copyrights. The harm this wrongful conduct will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if such wrongful conduct is allowed to continue without restraint.

85.    Plaintiffs are entitled to an injunction, during the pendency of this action, and permanently (i) enjoining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in such further unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and under the common law; and (ii) requiring Defendants, their licensees, assigns and all persons acting in concert with them, to properly designate Jerome Siegel on "Superboy" products, advertising and promotional materials as the creator of "Superboy."

86.    Plaintiffs have no adequate remedy at law with respect to such ongoing unlawful conduct.

87.    Plaintiffs are informed and believe and thereon allege that Defendants' wrongful conduct, acts and omissions were conducted in an intentional, malicious, calculated and oppressive manner in conscious disregard for Plaintiffs' rights, health and feelings, and knowingly and intentionally injured and damaged Plaintiffs, which conduct constituted oppression and malice as defined by California Civil Code § 3294. In accordance with California Civil Code § 3294, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants, to be assessed at trial.

## FOURTH CLAIM FOR RELIEF

(Injunctive Relief – Against All Defendants)

88.    Plaintiffs re-allege and incorporate herein by reference the allegations set forth in paragraphs 1 through 87, inclusive, as though fully set forth herein.

89.    Unless enjoined and restrained by order of the Court, Defendants' conduct will infringe Plaintiffs' soon to be Recaptured Copyrights.

90.    By reason of Defendants' imminent copyright infringement and Defendants' unfair trade practices and unfair competition against Plaintiffs, Plaintiffs have sustained and,

21

unless and until Defendants are enjoined, will continue to sustain substantial imminent and irreparable injury, loss and damage, including repeated infringement of their copyrights, diminution of the value of their copyrights, loss of customers, dilution of goodwill, and injury to their business reputation.

91.    Plaintiffs have no adequate remedy at law for many of their injuries and imminent injuries in that such injuries cannot be reasonably, adequately or precisely measured or compensated in damages if such wrongful conduct is not restrained and allowed to continue unabated.

92.    Plaintiffs are entitled to a preliminary injunction during the pendency of this action and a permanent injunction ordering that Defendants, their agents, employees, licensees and assigns (i) be enjoined from producing, reproducing and exploiting or authorizing the production, reproduction or exploitation, after the Termination Date, of new "Superboy" derivative works including, but not limited to, new "Superboy" merchandising, motion pictures, new episodes of the Smallville Series and/or other derivative television programs; and (ii) be required to accredit Jerome Siegel as the creator of "Superboy" on all "Superboy" products, advertising and promotional materials.

WHEREFORE, Plaintiffs pray for relief as follows:

## PRAYER FOR RELIEF

### ON THE FIRST CLAIM FOR RELIEF

93.    For a declaration as follows:

a.    That pursuant to the Copyright Act, 17 U.S.C.§304(c), Plaintiffs validly terminated effective November 17, 2004 all prior grants, assignments or transfers, to any of the Defendants and any of their predecessors-in-interest, of the renewal copyrights in and to the Siegel Superboy Material and the Recaptured Copyrights;

b.    That, as of November 17, 2004, Plaintiffs own the Recaptured Copyrights; and that on or after that date all pertinent copyright notices shall bear their names;

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

c.    That the Superboy Comic Books, merchandising, animated and live action television programming, including the Smallville Series are derivative of the Siegel Superboy Material;

d.    That the preparation, production, reproduction, distribution and/or exploitation, by Defendants, their licensees and/or assigns of new derivative works or products based on the "Superboy" mythology, including, but not limited to, new publications, merchandising, motion pictures, new episodes of the Smallville Series and/or other new derivative television programs, will infringe upon Plaintiff's Recaptured Copyrights;

e.    That Defendants, their licensees or assigns, are prohibited from such exploitation of the "Superboy" mythology in new derivative works or products created on or after the Termination Date, including, but not limited to, new publications, merchandising, motion pictures, episodes of the Smallville Series and other derivative television programs produced after the Termination Date;

f.    That Defendants had/have no authority to confer licenses or grants on others to reproduce, prepare derivative works of, distribute or exploit, after the Termination Date, the "Superboy" mythology, excluding the exploitation of derivative works produced prior to the Termination Date;

g.    That Plaintiffs are entitled to an accounting by the Defendants, jointly and severally, of any and all Proceeds, as defined hereinabove;

h.    That Plaintiffs are entitled to the imposition of a constructive trust for the benefit of Plaintiffs on any and all such unlawful Proceeds received and to be received; and

i.    That Plaintiffs are entitled to the restitution of any and all Proceeds.

<u>ON THE SECOND CLAIM FOR RELIEF</u>

94.    For an order preliminarily during the pendency of this action and thereafter permanently (i) enjoining Defendants, their officers, agents, employees, licensees and assigns and all persons acting in concert with them, from engaging in such further violations of the Lanham Act, 15 U.S.C. §§ 1117 and 1125; and (ii) requiring them to properly designate

23

Jerome Siegel as the creator of "Superboy" on all "Superboy" products, advertising and promotional materials;

95.    For compensatory and consequential damages according to proof as shall be determined at trial;

96.    For such other and further relief and remedies available under the Lanham Act, 15 U.S.C. § 1125, which the Court may deem just and proper; and

97.    For punitive and exemplary damages as may be awarded at trial.

### ON THE THIRD CLAIM FOR RELIEF

98.    For an accounting of any and all Proceeds;

99.    For the imposition of a constructive trust for the benefit of Plaintiffs on any and all unlawful Proceeds received and to be received by Defendants;

100.    For restitution to Plaintiffs of any and all unlawful Proceeds;

101.    For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from engaging in such further unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and/or under the common law, as alleged hereinabove; and (ii) requiring them to properly designate Jerome Siegel as the creator of "Superboy" on all "Superboy" products, advertising and promotional materials;

102.    For compensatory and consequential damages according to proof as shall be determined at trial;

103.    For such other and further relief and remedies available under California Business and Professions Code, §§ 17200 *et seq.*, which the Court may deem just and proper; and

104.    For punitive and exemplary damages as may be awarded at trial.

### ON THE FOURTH CLAIM FOR RELIEF

105.    For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and

24

assigns, and all persons acting in concert with them, from producing, exploiting or authorizing the production or exploitation of new "Superboy" derivative works, on or after November 17, 2004, including, but not limited to, new "Superboy" merchandising, motion pictures, new episodes of the Smallville Series and other derivative television programs; and (ii) requiring them to accredit Jerome Siegel as the creator of "Superboy" on "Superboy" products, advertising and promotional materials.

## ON ALL CLAIMS FOR RELIEF

106.    For Plaintiffs' costs of suit;

107.    For interest at the highest lawful rate on all sums awarded Plaintiffs other than punitive damages;

108.    For reasonable attorneys' fees; and

109.    For such other and further relief as the Court deems just and appropriate.

Dated: October 22, 2004                       LAW OFFICES OF MARC TOBEROFF

By: _____
                                                                    Marc Toberoff

Attorneys for Plaintiffs Joanne Siegel and
Laura Siegel Larson

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

**JURY TRIAL DEMANDED**

Plaintiffs hereby request a trial by jury on each claim for relief alleged in the Complaint.

Dated: October 22, 2004

LAW OFFICES OF MARC TOBEROFF

By: _____
     Marc Toberoff

Attorneys for Plaintiffs Joanne Siegel and Laura Siegel Larson

Complaint for Declaratory Relief, Lanham Act Violations, Unfair Competition and Injunctive Relief

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual

**DEFENDANTS** TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles County

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MARC TOBEROFF (CALIFORNIA STATE BAR NO. 188547)
THE LAW OFFICES OF MARC TOBEROFF
1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CA 90067
TELEPHONE: (310) 246-3333

Attorneys (If Known)
JOHN A. SCHULMAN (CALIFORNIA STATE BAR NO. 54521)
WARNER BROS. ENTERTAINMENT INC.
4000 WARNER BOULEVARD
BURBANK, CA 91522
TELEPHONE: (818) 954-4225

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ AS DETERMINED BY TRIAL

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Declaratory Relief RE: Termination, 17 U.S.C. 304(c)

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities /Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability
**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157
**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition
**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act
**PROPERTY RIGHTS**
☒ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark
**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____

CV-71 (01/03)                      **CIVIL COVER SHEET**                      Page 1 of 2

CV 04-08776 RSWL (RWX)

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM JS-44C, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☒ No   ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Appear to arise from the same or substantially identical transactions, happenings, or events;

☐ B.  Involve the same or substantially the same parties or property;

☐ C.  Involve the same patent, trademark or copyright;

☐ D.  Call for determination of the same or substantially identical questions of law, or

☐ E.  Likely for other reasons  may entail unnecessary duplication of labor if heard by different judges.

---

IX. VENUE: List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

JOANNE SIEGEL, an individual, resides in Los Angeles County.

LAURA SIEGEL LARSON, an individual, resides in Los Angeles County.

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

TIME WARNER INC., a corporation, resides in Los Angeles County by and through its conducting business therein.

WARNER COMMUNICATIONS INC., a corporation, resides in Los Angeles County by and through its conducting business therein.

WARNER BROS. ENTERTAINMENT INC., a corporation, resides in  Los Angeles County.

WARNER BROS. TELEVISION INC., a corporation, resides in Los Angeles County. (SEE ADDITIONAL SHEET)

List the California County, or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

[1] DECLARATORY RELIEF RE: TERMINATION, 17 U.S.C. 304(c)- acts or omissions giving rise to this claim occurred whole or in part in Los Angeles County.

[2] VIOLATION OF LANHAM ACT 15 U.S.C. 1125- acts or omissions giving rise to this claim occurred whole or in part in Los Angeles County.

[3] VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONAL CODE 17200 ET SEQ.- acts or omissions giving rise to this claim occurred whole or in part in Los Angeles County. (SEE ADDITIONAL SHEET)

---

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date _____10/22/04_____

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**(ADDITIONAL SHEET)**

JOANNE SIEGEL, an individual and

LAURA SIEGEL LARSON, an individual.

        Plaintiffs,

   vs.

TIME WARNER INC., a corporation;

WARNER COMMUNICATIONS INC,

a corporation; WARNER BROS.

ENTERTAINMENT INC., a corporation;

WARNER BROS. TELEVISION INC.,

a corporation; DC COMICS, a general

partnership; and DOES 1-10,

        Defendants.

---

## IX. VENUE (CONTINUED)

List the California County, or State if other than California, in which EACH defendant

resides. (CONTINUED)

DC COMICS, a general partnership, resides in Los Angeles County by and through its

conducting business therein.

List the California County, or state if other than California, in which **EACH** claim arose.

(CONTINUED)

[4] INJUNCTIVE RELIEF- the acts or omissions giving rise to this claim occurred whole
or in part in Los Angeles County.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Pursuant to the Local Rules Governing Duties of Magistrate Judges, the following Magistrate Judge has been designated to hear discovery motions for this case at the discretion of the assigned District Judge:

## (AJWx)

| | |
|---|---|
| [_] Paul L. Abrams | [_] James W. McMahon |
| [_] Robert N. Block | [_] Margaret A. Nagle |
| [_] Rosalyn M. Chapman | [_] Arthur Nakazato |
| [_] Charles Eick | [_] Fernando M. Olguin |
| [_] Paul Game | [_] Suzanne H. Segal |
| [_] Marc Goldman | [_] Carolyn Turchin |
| [_] Stephen J. Hillman | [_] Patrick J. Walsh |
| [_] Jeffrey W. Johnson | [X] A. J. Wistrich |
| [_] Victor B. Kenton | [_] Carla Woehrle |
| [_] Stephen G. Larson | [_] Ralph Zarefsky |
| [_] Jennifer T. Lum | |

Upon the filing of a discovery motion, the motion will be presented to the United States District Judge for consideration and may thereafter be referred to the Magistrate Judge for hearing and determination. The Magistrate Judge's initials should be used on all documents filed with the Court so that the case number reads as follows:

## CV04- 8776 RSWL (AJWx)

=== === === === === === === === === === === === === === === === === === === === === === === ==:

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (08/02) NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY