Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

**ORIGINAL**

CLERK, U.S. DISTRICT COURT
OCT 1 8 2005
CENTRAL DISTRICT OF CALIFORNIA
DEPU

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL, an individual; and
LAURA SIEGEL LARSON, an
individual,

  Plaintiffs,

  vs.

TIME WARNER INC., a corporation;
WARNER COMMUNICATIONS
INC., a corporation; WARNER BROS.
ENTERTAINMENT INC., a
corporation; WARNER BROS.
TELEVISION PRODUCTION INC., a
corporation; DC COMICS, a general
partnership; and DOES 1-10,

  Defendants.

Case No. CV 04-08776 RSWL (RZx)

**FIRST AMENDED
SUPPLEMENTAL COMPLAINT
FOR**:

[1] COPYRIGHT INFRINGEMENT,
  17 U.S.C. §§ 101 *ET SEQ.*;
[2] DECLARATORY RELIEF RE:
  TERMINATION,
  17 U.S.C. § 304(c);
[3] VIOLATION OF LANHAM ACT,
  15 U.S.C. § 1125;
[4] VIOLATION OF CALIFORNIA
  BUSINESS AND
  PROFESSIONAL CODE
  §§ 17200 *ET SEQ.*; and
[5] INJUNCTIVE RELIEF.

DEMAND FOR JURY TRIAL

DOCKETED ON CM
OCT 1 9 2005
BY ___ 009

1

First Amended Suppl. Complaint for Copyright Infringement, Decl. Relief, Lanham Act and Unfair Comp.

Dockets.Justia.com

DC COMICS,

                        Counterclaimant,

        vs.

JOANNE SIEGEL, an individual; and
LAURA SIEGEL LARSON, an
individual,

                        Counterclaim Defendants.

Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by and through their attorneys of record, hereby allege as follows:

## JURISDICTION AND VENUE

1.    This is a civil action for copyright infringement, declaratory relief, violations of the Lanham Act and violations of the California unfair competition laws arising out of Plaintiffs' termination of prior grants of copyright in and to the original character and work created by Jerome Siegel known as "Superboy" and subsequent "Superboy" works pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c), and defendants' willful misconduct with respect thereto.

2.    This Court has original subject matter jurisdiction over the claims set forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 *et al.*, pursuant to the Lanham Act, 15 U.S.C. §§ 1121 and 1125(a) and (c) and 28 U.S.C. §§ 1331, 1332 and 1338(a).

3.    This Court has supplemental jurisdiction over the related state claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein.

2

1    4.    This Court has personal jurisdiction over the defendants in that

2  defendants are regularly doing business in the State of California and in this

3  District, and because a substantial portion of the relevant acts complained of

4  herein occurred in the State of California and this District.

5    5.    Venue is proper in the United States District Court for the Central

6  District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a)

7  because a substantial part of the wrongful acts that give rise to the claims herein

8  below occurred in this district and because WARNER BROS.

9  ENTERTAINMENT INC. and WARNER BROS. TELEVISION

10  PRODUCTION INC. have principal places of business in this district.

11    **PARTIES**

12    6.    Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an

13  individual and citizen of, and resides in, the State of California, in the County of

14  Los Angeles, and is and at all times has been a citizen of the United States.

15  Joanne Siegel is the widow of famed comic book creator Jerome (a.k.a. "Jerry")

16  Siegel.

17    7.    Plaintiff LAURA SIEGEL LARSON (hereinafter "Laura Siegel") is

18  an individual and a citizen of, and resides in, the State of California, in the

19  County of Los Angeles, and is and at all times has been a citizen of the United

20  States.  Laura Siegel is the daughter of Jerome Siegel.

21    8.    Plaintiffs are informed and believe and based thereon allege that

22  defendant WARNER COMMUNICATIONS INC. (hereinafter "WCI") is a

23  corporation organized and existing under the laws of the State of Delaware,

24  which has its principal place of business in the State of New York; that WCI is

25  the general partner of the Defendant DC Comics partnership; and that WCI is a

26  wholly owned subsidiary of Defendant TIME WARNER INC.

27    9.    Plaintiffs are informed and believe and based thereon allege that

28  defendant WARNER BROS. ENTERTAINMENT INC. (hereinafter "Warner

3

1  Bros.") is a corporation organized and existing under the laws of the State of

2  Delaware, which has its principal place of business in Los Angeles County,

3  California; and that Warner Bros. is a wholly owned subsidiary of Defendant

4  TIME WARNER INC.

5       10.   Plaintiffs are informed and believe and based thereon allege that

6  defendant WARNER BROS. TELEVISION PRODUCTION INC. (hereinafter

7  "WBTV") is a corporation organized and existing under the laws of the State of

8  Delaware, which has its principal place of business in Los Angeles County,

9  California; and that WBTV is a wholly owned subsidiary of Defendant Warner

10 Bros.

11      11.   Plaintiffs are informed and believe and based thereon allege that

12 Defendant DC COMICS (hereinafter "DC") is a general partnership organized

13 and existing under the laws of the State of New York, which has its principal

14 place of business in the State of New York; that DC regularly conducts

15 significant business in the State of California and in the County of Los Angeles;

16 that DC is wholly co-owned by Warner Bros. and WCI, but Warner Bros.

17 exercises day to day *de facto* control over DC.

18      12.   Plaintiffs are informed and believe and based thereon allege that on

19 or about September 30, 1946, the New York corporations, Detective Comics,

20 Inc., Superman, Inc., All American Comics, Inc., Jolaine Publications, Inc.,

21 Wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc., Gainlee

22 Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc. and

23 Trafalgar Printing Co., Inc. were consolidated into the New York corporation

24 National Comics Publications, Inc., the name of which was later changed to

25 National Periodical Publications, Inc., and eventually to DC Comics; and further

26 that DC, Warner Bros. and Time Warner, and/or each of them, are the alleged

27 successor(s)-in-interest to National Periodical Publications, Inc.

28

13.   Plaintiffs are informed and believe and based thereon allege that Defendant TIME WARNER INC. (hereinafter "Time Warner") is a corporation organized and existing under the laws of the State of Delaware, which has its corporate headquarters in the State of New York, and that Time Warner regularly conducts significant ongoing business in the State of California and in the County of Los Angeles.  Time Warner is the parent company of WCI, Warner Bros., WBTV and DC. (Time Warner, WCI, Warner Bros., WBTV and DC are sometimes collectively referred to hereinafter as the "Defendants;" and each reference to Defendants shall also refer to each Defendant).

14.   Plaintiffs are informed and believe and based thereon allege that Defendant DC never, or rarely, exploits "Superboy," independently of its controlling parent company, Warner Bros.; that even relatively linear functions such as "Superboy" licensing are not handled directly by DC, but are exploited exclusively through Warner Bros.; that the agreements and other arrangements between Defendants WCI, Warner Bros., WBTV and DC regarding "Superboy" are not "arm's length" agreements, serve primarily Warner Bros.' and WBTV'S interests, and thus, do not reflect the appropriate market values of the copyrights to "Superboy," at issue herein.

15.   Plaintiffs are informed and believe and based thereon allege that Defendants Time Warner, WCI, Warner Bros., WBTV and DC are, and at all times material hereto were, the alter-egos of each other and there exists and has existed at all times material hereto a unity of interest and ownership among such Defendants such that any separateness has ceased to exist in that Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and caused valuable assets, property, rights and/or interests to be transferred to each other without adequate consideration.

5

16.     Plaintiffs are informed and believe and based thereon allege that the fictitiously named Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained.  For convenience, each reference herein to a named Defendant shall also refer to the Doe Defendants and each of them.

17.     Plaintiffs are informed and believe and based thereon allege that each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, and that at all times herein mentioned, each of the Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Defendants is jointly and severally responsible for the damages hereinafter alleged.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

18.     In or about 1938, Jerome Siegel conceived of a new comic strip series entitled "Superboy."  On November 30, 1938 he submitted to Detective Comics for its consideration, and its acceptance or rejection for publication, a written summary of the character, conception and plan for his "Superboy" comic strip series, which Mr. Siegel suggested could run as a Sunday syndicated comic strip and/or in Detective Comics' magazines, "More Fun Comics" or "New Adventure Comics."

19.     By letter dated December 2, 1938, Detective Comics rejected and did not elect to publish Mr. Siegel's "SUPERBOY" character and concept.

20.     At the time, Detective Comics was publishing the now famous "Superman" comic books written by Jerome Siegel and drawn by artist, Joseph

6

1 │ Shuster (hereinafter, "Siegel and Shuster"). "Superman" had been originally

2 │ conceived by Mr. Siegel in or about 1933.

3 │     21.   Plaintiffs are informed and believe and thereon allege that at all

4 │ times relevant to the within action Jerome Siegel acted as an independent

5 │ contractor and not as a traditional employee of Detective Comics; that, without

6 │ limitation, Mr. Siegel was not paid a salary, but was consistently paid on a "per

7 │ page" basis, and only for materials actually delivered by him and published.

8 │ Plaintiffs are further informed and believe and thereon allege that in

9 │ compensating Mr. Siegel, Detective Comics did not withhold or deduct payroll,

10 │ social security and other taxes normally deducted from employee salaries;

11 │ Detective Comics did not provide employee benefits to Mr. Siegel; Mr. Siegel

12 │ worked from his own premises (not Detective Comics' premises); determined

13 │ his own hours and days of work; supplied, used and paid for his own

14 │ instrumentalities, tools and materials; and hired and paid for his own assistants.

15 │     22.   On or about December, 1940, Jerome Siegel, on his own, authored

16 │ a complete original "Superboy" story (hereinafter referred to as the "Siegel

17 │ Superboy Story"). The Siegel Superboy Story together with all other material

18 │ created by Jerome Siegel relating to "SUPERBOY" is hereinafter sometimes

19 │ referred to as the "Siegel Superboy Material."

20 │     23.   The Siegel Superboy Material contained in detail and with

21 │ particularity the unique conception and character of "Superboy," the continuity

22 │ and dialogue for the first "release" or "releases" of "Superboy," and the plan for

23 │ the future publication of a "Superboy" comic book series.

24 │     24.   No other person, nor entity, aside from Jerome Siegel, authored or

25 │ contributed to the Siegel Superboy Material.

26 │     25.   The Siegel Superboy Material sets forth the following:

27 │ "Superboy's" character, origins, family and social life as a youth growing up in

28 │ a small-town in the rural American heartland; while grappling with the

1 challenges of growing up, "Superboy" must face the challenges and

2 responsibilities of his extraordinary strength and developing powers and of

3 concealing that he is very different from others; "Superboy" is raised in his

4 small town by foster parents, the "Kents," humble, moral people who are

5 sensitive to their "son's" uniqueness, keep his secret and gently guide him; after

6 describing "Superboy's" origins and his antics as a baby who is taught by the

7 Kents to restrain or conceal his tremendous strength, Mr. Siegel's "Superboy"

8 series starts with the youth at age eleven or twelve, while he attends junior high

9 school in the hometown where his crime fighting adventures take place;

10 "Superboy" protects his small town and its inhabitants, including his classmates,

11 from accidents and evil doers; "Superboy's" central dilemma, while facing

12 adolescence, school cliques, bullies and "bad guys" alike is to conceal his true

13 self while using his great powers to help those in need.

14     26.    By comparison, in Action Comics No. 1, where "Superman"

15 debuted in 1938, we see "Superman" as an infant in only one panel on page one.

16 By the next panel on page one he has already become an adult with fully

17 developed superpowers.

18     27.    On or about December, 1940, Mr. Siegel submitted the Siegel

19 Superboy Story to Detective Comics for its further consideration; however,

20 Detective Comics continued to reject and did not elect to publish the "Superboy"

21 comic book series.

22     28.    Thereafter, by letters dated February 6, 1941, July 1, 1941 and

23 January 1, 1942, Jerome Siegel again wrote to Detective Comics in an attempt to

24 pique their interest in his new "Superboy" comic book series.

25     29.    Detective Comics, however, consistently purported to reject Mr.

26 Siegel's proposals and material regarding a new "Superboy" comic book series.

27     30.    Jerome Siegel entered the U.S. Army in July 1943 to serve his

28 country during World War II.

8

31.    While Mr. Siegel was stationed in the Pacific, Detective Comics, without notice to Jerome Siegel and without his consent, illegally used and published the Siegel Superboy Material as an illustrated comic book story in the body of the January-February, 1945 issue of More Fun Comics, No. 101, which was published and issued for sale on November 18, 1944.  The copyright to More Fun Comics No. 101 was renewed on July 17, 1972, in the name of Detective Comics' successor, National Periodical Publications, Inc., claiming as proprietor of copyright.

32.    Defendant DC states in its book, <u>DC Comics: A Celebration of the World's Favorite Comic Book Heroes</u>, Copyright 1995, 2003 DC Comics: "MORE FUN COMICS # 101 [incorporating the Siegel Superboy Material] ...la[id] the groundwork for countless stories and new directions to come. Superboy's learning experiences and the gentle guidance of Ma and Pa Kent become important touchstones in the character's development..."

33.    In or about 1947, Siegel and Shuster filed an action in the Supreme Court of the State of New York, County of Westchester against National Comics Publications, Inc. (hereinafter, the "1947 Action") to determine the origin and ownership of "Superboy;" and to determine the validity of various "Superman" contracts between Siegel and Shuster and National Comics Publications, Inc.'s predecessors–in–interest (including Detective Comics).  Pursuant to stipulation of the parties the action was referred for decision to an official referee of the New York Supreme Court (hereinafter, the "Official Referee").  After trial of the action the Official Referee rendered an opinion dated November 1, 1947.  On April 12, 1948, the Official Referee signed detailed findings of fact and conclusions of law and entered an interlocutory judgment.  The Official Referee found that Jerome Siegel was the originator and sole owner of the comic strip feature, "Superboy."  None of said parties perfected an appeal of the Official Referee's opinion, findings of fact and conclusions of law.  Settlement

9

1  negotiations ensued, resulting in a stipulation of settlement between said parties

2  executed on or about May 19, 1948 (hereinafter, the "1948 Stipulation"), and the

3  entry in the New York Supreme Court of a final consent judgment dated May

4  21, 1948.

5       34.   In the 1947 Action, the Official Referee found, after reviewing

6  considerable documentary and testimonial evidence regarding "Superboy" (and

7  Plaintiffs reiterate and allege herein): (i) that the original "Superboy" material

8  created solely by Jerome Siegel contained with detail and particularity the

9  continuity, plan and dialogue for the first "release" or "releases" of "Superboy,"

10  the conception and character of "Superboy" and the entire plan for the future

11  publication of "Superboy"; (ii) that all of the comic strip material published

12  under the title "Superboy" by Detective Comics and later by its successor,

13  National Comics Publications, Inc., up until trial of the 1947 Action, on or about

14  April 12, 1948, copied, embodied and was based upon the conception,

15  expression, plan and direction contained in Jerome Siegel's original November

16  30, 1938 letter to Detective Comics and in the Siegel Superboy Story, solely

17  created by Jerome Siegel; (iii) that "Superman" did not contain the plan, scheme

18  or conception of Jerome Siegel's comic strip, "Superboy" and that "Superboy"

19  was a work different and distinct from "Superman"; (iv) that the publication of

20  all such comic strip material entitled "Superboy" by Detective Comics was at all

21  times illegal and without the permission of Jerome Siegel; and (v) that Jerome

22  Siegel, was the originator and sole owner of the comic strip feature, "Superboy,"

23  and had the sole and exclusive right to create, sell and distribute comic strip

24  material under the title "Superboy," of the type and nature published by

25  Detective Comics.

26       35.   Subsequent to these court findings, Mr. Siegel assigned rights in

27  "Superboy" to National Periodical Publications, Inc in the 1948 Stipulation.

28

First Amended Suppl. Complaint for Copyright Infringement, Decl. Relief, Lanham Act and Unfair Comp.

36.    In <u>Jerome Siegel and Joseph Shuster v. National Periodical</u>
<u>Publications, Inc. et al.</u>, 509 F.2d 909 (2nd Cir., 1974), the Second Circuit held
that the Official Referee's findings of fact and conclusions of law in the 1947
Action, to which no appeals were taken, were binding on the parties under the
doctrine of *res judicata.*

37.    "Superboy's" small town adventures were published in "More Fun
Comics," Nos. 101-107 (1944-1945), "Adventure Comics" Nos. 103-503 (1946-
1983), "Superboy" Nos. 1-235 (1949-1977), "The New Adventures of
Superboy" Nos. 1-54 (1979-1984), and another series of comics entitled
"Superboy" (sometimes also known as "The Adventures of Superboy") Nos. 1-
100 (1989-2002), which were published at regular intervals and in numerous
other comic book publications (these series of comic books featuring
"Superboy" are hereinafter sometimes referred to, in whole or in part, as the
"Superboy Comic Books").  "Superboy" has also been exploited in several
television series, including the animated "The Adventures of Superboy" (1966),
the live action series "The Adventures of Superboy" (1988-1992) and
"Smallville" (2001 - ongoing) and in considerable merchandising over the years.

38.    The aforesaid Superboy Comic Books, television programs and
merchandising are substantially similar to and derivative of the Siegel Superboy
Material.

39.    As originally conceived by Jerome Siegel, "Superboy" was to
naturally mature from an eleven or twelve year old in junior high school to a
teenager in high school.  Mr. Siegel wrote in the Siegel Superboy Story: "And
so was launched the career of SUPERBOY, youthful Champion of
Righteousness!  In later years he was to become the mighty figure known as
Superman!  But the story of SUPERBOY'S amazing and often humorous
adventures is a series of astonishing narratives in itself!"  The adventures were
to take place in the same small rural American town in which he grew up with

11

1  his foster parents, the Kents, who named him Clark. This fictional town was

2  named "Smallville" early on in "Superboy No. 2," published in 1949. In the

3  Superboy Comic Books and in the animated and live action "The Adventures of

4  Superboy" television series, "Superboy's" crime fighting adventures, throughout

5  the years, for the most part have taken place in "Smallville," the hometown he

6  protects. For more than 50 years in this large body of published and broadcast

7  material and thus, in the public's mind, the town of "Smallville" has been

8  associated with "Superboy."

9       40.    Defendant WBTV's television series, "Smallville" (hereinafter

10  referred to as the "Smallville Series") which debuted in October, 2001 and is

11  currently in its fifth season, is derivative of the Siegel Superboy Material. The

12  Smallville Series is set in "Superboy's" small rural hometown from which the

13  series takes its name. The Smallville Series focuses on a youth with

14  extraordinary powers raised in the American heartland, who, while grappling

15  with the challenges of growing up, must face the responsibilities of his emerging

16  powers and conceal that he is very different from others. Like the Siegel

17  Superboy Material, the Smallville Series follows the anonymous crime fighting

18  adventures of its superhero in the small town he protects, while examining the

19  character's social and family life. In the Smallville Series, as in the Siegel

20  Superboy Story, the main character, Clark, is raised by his humble, earnest and

21  understanding foster parents, the Kents, who keep his secret and to whom he

22  turns for guidance as he faces daily challenges due to his differences

23  /superpowers of which he gradually becomes aware. Warner Bros.' own

24  marketing materials for the Smallville Series state: "Between the boy Clark

25  Kent thought he was and the man he is destined to become lie the compelling

26  stories of 'Smallville'" -- a premise and expression derivative of the Siegel

27  Superboy Materials.

28

1     41.    The Siegel Superboy Story and the Siegel Superboy Material are

2  wholly original with author Jerome Siegel and constitute copyrightable subject

3  matter under the laws of the United States.

4     42.    The Siegel Superboy Material was published in the serialized

5  magazine, More Fun Comics, No. 101, for which copyright was secured on

6  November 23, 1944 with the Register of Copyrights under copyright registration

7  number B653651 and renewed on July 17, 1972 in the name of National

8  Periodicals Publications, claiming as proprietor of copyright, under copyright

9  renewal registration number R532582.  The Siegel Superboy Material was also

10  published in subsequent "Superboy" publications for which copyright was

11  secured through registration with the United States Register of Copyrights prior

12  to November 17, 1948 and renewed with the Register of Copyrights.

13     43.    Jerome Siegel was the sole proprietor of all right, title and interest

14  in and to the copyrights in the Siegel Superboy Material prior to granting rights

15  in "Superboy" to National Comics Publications, Inc. in the 1948 Stipulation.

16     44.    As the sole proprietor of such copyrights, Jerome Siegel had the

17  exclusive right to, among other things, prepare or authorize the preparation of

18  derivative works based on the Siegel Superboy Material.

19     45.    The main character, conception, story, continuity and other

20  elements in More Fun Comics No. 101 and subsequent Superboy Comic Books

21  and television programs, including the Smallville Series are substantially similar

22  to the protected expression in the Siegel Superboy Story and Siegel Superboy

23  Material.

24     46.    On November 8, 2002, Plaintiffs, Joanne Siegel and Laura Siegel,

25  served by first class mail and by certified mail, return receipt requested, both

26  postage prepaid, a notice of termination, as permitted by the Copyright Act, 17

27  U.S.C. § 304(c) (hereinafter, the "Termination Notice") on each of the

28  Defendants and a number of their subsidiaries, licensees and affiliates, which

13

1    terminates, effective November 17, 2004 (hereinafter, the "Termination Date"),

2    Jerome Siegel's alleged grant in the 1948 Stipulation (and in any other alleged

3    prior grants) of the renewal copyrights to the "Superboy" character(s),

4    conceptions, stories, continuity, setting, themes and other copyrightable

5    "Superboy" element or aspects originally created and owned by Jerome Siegel

6    (hereinafter sometimes referred to collectively as the "Recaptured Copyrights").

7    The Termination Notice was duly recorded with the Library of Congress and the

8    United States Copyright Office.

9        47.    The Siegel Superboy Material was published in (i) More Fun

10    Comics Nos. 101 -107 (statutory copyright to More Fun Comics No. 107 was

11    secured on November 20, 1945), (ii) Adventure Comics No. 103-135 (statutory

12    copyright to Adventure Comics No. 135 was secured on October 20, 1948) and

13    (iii) subsequent works involving "Superboy," all for which copyright was

14    registered and renewed with the United States Register of Copyrights, as set

15    forth in the Notice of Termination.

16        48.    The Notice of Termination was drafted, served on Defendants and

17    filed with the United States Copyright Office, all in full compliance with the

18    Copyright Act, 17 U.S.C. 304(c), and the regulations promulgated thereunder by

19    the United States Register of Copyrights, 37 C.F.R. § 201.10 (2003). (Plaintiffs'

20    aforesaid exercise of their termination rights under 17 U.S.C. § 304(c) regarding

21    "Superboy" is sometimes hereinafter referred to as the "Termination").

22        49.    As the sole creator and author of "Superboy," Jerome Siegel owned

23    all rights in "Superboy," including the copyrights to "Superboy" prior to the

24    alleged transfer or assignment of "Superboy" pursuant to the 1948 Stipulation.

25        50.    The Notices of Termination terminated on November 17, 2004

26    (hereinafter, the "Termination Date") all prior grants or purported grants of the

27    renewal copyrights in and to "Superboy" for the extended renewal term

28

14

---

1  (hereinafter, sometimes referred to individually and collectively as the

2  "Recaptured Copyrights"), including all such grants in the 1948 Stipulation.

3      51.   On November 17, 2004, the Termination Date, Plaintiffs recovered

4  ownership to the Recaptured Copyrights for their extended renewal terms.  In

5  accordance with 17 U.S.C. 304(c), and as set forth in the Notice of Termination,

6  Jerome Siegel's surviving son, Michael Siegel, is also entitled to share in the

7  proceeds from this recaptured interest.

8      52.   Notwithstanding the clear findings of fact in the 1947 Action that

9  Jerome Siegel had solely created "Superboy," Defendants continue to publicly

10  distribute false and misleading representations as to the origins and creation of

11  "Superboy."

12      53.   For instance, in Defendant DC's book alleged hereinabove, <u>DC</u>

13  <u>Comics: A Celebration of the World's Favorite Comic Book Heroes</u>, *supra*, DC

14  states "Editor Jack Schiff is credited with the original suggestion for the

15  "Superboy" series…The initial scripts were by writer Don Cameron…One

16  reader who didn't care for "Superboy" was another returning soldier, Jerry

17  Siegel…"  In the introduction to Defendant DC's November 2000 reprint of

18  More Fun Comics No. 101 in which "Superboy" made his first appearance in

19  1944, DC gives the following credit: "'Superboy' Story by Unknown," even

20  though it had been held in the 1947 Action that the "Superboy" story appearing

21  in More Fun Comics No. 101 was directly "lifted" from the Siegel Superboy

22  Story.

23      54.   On August 27, 2004, over twenty-one months after the Termination

24  Notice had been served on Defendants, Defendant DC, by its attorneys (Fross

25  Zelnick, *et al*) sent a letter to the Plaintiffs' attorneys of record (hereinafter the

26  "August 27, 2004 Letter"), stating in relevant part:

27          "DC Comics hereby rejects the Superboy Notice [of

28          Termination] to the extent it seeks to terminate any

15

---

matter beyond such novel plot and dialogue additions,
to the extent copyrightable, that may exist in Superboy
based upon the script and scenario submitted by Mr.
Siegel to DC in 1940."

55.    Nonetheless, DC asserts in its August 27, 2004 Letter:

"DC Comics will vigorously oppose any attempt by
Mrs. Siegel and Mrs. Siegel Larson...to exploit or
authorize the exploitation of any copyrights, or indeed
any rights at all, based on the Superboy Notice [of
Termination]."

56.    Defendants further indicated in the August 27, 2004 Letter that, notwithstanding the Termination, DC and its licensees, including but not limited to Warner Bros. and Time Warner, would, after the Termination Date, continue to prepare, produce, copy, distribute and exploit new episodes of the derivative Smallville Series, in addition to other new "Superboy" works.

57.    Defendants also implied in the August 27, 2004 Letter that if Plaintiffs continue to assert their rights in "Superboy" under the Copyright Act, Defendants might take away Plaintiff Joanne Siegel's widow's pension and medical benefits on which the elderly Mrs. Siegel heavily relies, even though such benefits are payable pursuant to a written commitment by Defendant WCI which has nothing to do with the "Superboy" Termination.  DC's August 27, 2004 Letter states:

"This letter... is written without prejudice to any of
our client's rights or remedies, including with respect
to the parties' continuing rights and obligations under
their agreements providing, among other things,
compensation and other benefits to Mrs. Siegel..."

16

58.     Defendant DC's August 27, 2004 Letter constitutes a thinly veiled threat that if Plaintiffs persist with the assertion of their statutory rights under the Copyright Act, 17 U.S.C. § 304(c) and/or attempt to exploit *any* of their Recaptured Copyrights in "Superboy," Defendants would launch a campaign of intimidation, including, but not limited to, withholding widow's pension and medical benefits that Defendants had promised in writing to provide to Joanne Siegel, instituting retaliatory litigation against Plaintiffs; and wielding Defendants' enormous market power to constrict Plaintiffs' ability to exploit their Recaptured Copyrights.  Given that Time Warner is one of the largest media companies in the world, with over $38 billion in annual revenues, Defendants' threats wrongfully encumbered and will continue to encumber the bona fide copyright interests that Plaintiffs regained on November 17, 2004 under 17 U.S.C. § 304(c).

59.     Subsequent to the Termination Date, Defendants have continued to prepare, produce, copy, distribute or exploit, and/or authorize others to prepare, produce, copy, distribute or exploit, new derivative works which copy and are based on the Siegel Superboy Material in willful violation of the Copyright Act.

60.     As a direct and proximate result of Defendants' actions Plaintiffs have suffered and will continue to suffer irreparable harm and damages, much of which cannot be reasonably or adequately measured or compensated in damages.

### FIRST CLAIM FOR RELIEF

(Copyright Infringement, 17 U.S.C. §§ 101 *et seq.* - Against All Defendants)

61.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60 inclusive, as though fully set forth herein.

62.     The Siegel Superboy Material is wholly original and copyrightable subject matter under the laws of the United States.

17

63.    The Siegel Superboy Material was initially published in More Fun Comics No. 101, which was registered for copyright on November 18, 1944 under registration number B653651, and such copyright was renewed on July 17, 1972 under registration number R532582.

64.    The Siegel Superboy Material was also published, in whole or in part, in subsequent comic books, including but not limited to, More Fun Comics No. 102, which was registered for copyright on January 16, 1945 under registration number B661073, and such copyright was renewed on July 17, 1972 under registration number R532589; More Fun Comics No. 103, which was registered for copyright on March 20, 1945 under registration number B669959, and such copyright was renewed on November 1, 1972 under registration number R538883; More Fun Comics No. 104, which was registered for copyright on May 28, 1945 under registration number B679484, and such copyright was renewed on January 10, 1973 under registration number R544129; More Fun Comics No. 105, which was registered for copyright on July 23, 1945 under registration number B687306, and such copyright was renewed on May 10, 1973 under registration number R552083; More Fun Comics No. 106, which was registered for copyright on  September 23, 1945 under registration number B696308, and such copyright was renewed on May 10, 1973 under registration number R552091; More Fun Comics No. 107, which was registered for copyright on November 20, 1945 under registration number B701661, and such copyright was renewed on May 10, 1973 under registration number R552094; Adventure Comics No. 103, which was registered for copyright on February 25, 1946 under registration number B10729, and such copyright was renewed on November 9, 1973 under registration number R562273; Adventure Comics No. 104, which was registered for copyright on March 26, 1946 under registration number B16106, and such copyright was renewed on November 9, 1973 under registration number R562278; Adventure

18

1  Comics No. 105, which was registered for copyright on April 23, 1946 under

2  registration number B18577, and such copyright was renewed on November 9,

3  1973 under registration number R562282; Adventure Comics No. 106, which

4  was registered for copyright on May 22, 1946 under registration number

5  B24371, and such copyright was renewed on November 9, 1973 under

6  registration number R562286; Adventure Comics No. 107, which was registered

7  for copyright on June 19, 1946 under registration number B26595, and such

8  copyright was renewed on November 9, 1973 under registration number

9  R562290; Adventure Comics No. 108, which was registered for copyright on

10  July 22, 1946 under registration number B30049, and such copyright was

11  renewed on November 9, 1973 under registration number R562294; Adventure

12  Comics No. 109, which was registered for copyright on August 19, 1946 under

13  registration number B34035, and such copyright was renewed on November 9,

14  1973 under registration number R562298; Adventure Comics No. 110, which

15  was registered for copyright on September 23, 1946 under registration number

16  B40315, and such copyright was renewed on November 9, 1973 under

17  registration number R562302; Adventure Comics No. 111, which was registered

18  for copyright on October 21, 1946 under registration number B50223, and such

19  copyright was renewed on November 9, 1973 under registration number

20  R562306; Adventure Comics No. 112, which was registered for copyright on

21  November 20, 1946 under registration number B50224, and such copyright was

22  renewed on July 10, 1974 under registration number R580544; Adventure

23  Comics No. 113, which was registered for copyright on December 18, 1946

24  under registration number B55663, and such copyright was renewed on July 10,

25  1974 under registration number R580554; Adventure Comics No. 114, which

26  was registered for copyright on January 22, 1947 under registration number

27  B60632, and such copyright was renewed on July 10, 1974 under registration

28  number R580562; Adventure Comics No. 115, which was registered for

19

1  copyright on February 19, 1947 under registration number B63437, and such

2  copyright was renewed on July 10, 1974 under registration number R580567;

3  Adventure Comics No. 116, which was registered for copyright on March 19,

4  1947 under registration number B68976, and such copyright was renewed on

5  July 10, 1974 under registration number R580577; Adventure Comics No. 117,

6  which was registered for copyright on April 27, 1947 under registration number

7  B73542, and such copyright was renewed on July 10, 1974 under registration

8  number R580584; Adventure Comics No. 118, which was registered for

9  copyright on May 21, 1947 under registration number B78377, and such

10 copyright was renewed on September 16, 1974 under registration number

11 R585271; Adventure Comics No. 119, which was registered for copyright on

12 June 18, 1947 under registration number B83287, and such copyright was

13 renewed on September 16, 1974 under registration number R585272; Adventure

14 Comics No. 120, which was registered for copyright on July 21, 1947 under

15 registration number B88104, and such copyright was renewed on September 16,

16 1974 under registration number R585273; Adventure Comics No. 121, which

17 was registered for copyright on August 20, 1947 under registration number

18 B93830, and such copyright was renewed on September 16, 1974 under

19 registration number R585274; Adventure Comics No. 122, which was registered

20 for copyright on September 17, 1947 under registration number B97348, and

21 such copyright was renewed on January 23, 1975 under registration number

22 R596253; Adventure Comics No. 123, which was registered for copyright on

23 October 20, 1947 under registration number B102774, and such copyright was

24 renewed on January 23, 1975 under registration number R596260; Adventure

25 Comics No. 124, which was registered for copyright on November 19, 1947

26 under registration number B106643, and such copyright was renewed on June

27 20, 1975 under registration number R608028; Adventure Comics No. 125,

28 which was registered for copyright on December 17, 1947 under registration

20

1  number B112479, and such copyright was renewed on June 20, 1975 under

2  registration number R608045, Adventure Comics No. 126, which was registered

3  for copyright on January 19, 1948 under registration number B118353, and such

4  copyright was renewed on June 20, 1975 under registration number R608071;

5  Adventure Comics No. 127, which was registered for copyright on February 18,

6  1948 under registration number B123413, and such copyright was renewed on

7  June 20, 1975 under registration number R608091; Adventure Comics No. 128,

8  which was registered for copyright on March 17, 1948 under registration number

9  B126013, and such copyright was renewed on June 20, 1975 under registration

10  number R608106; Adventure Comics No. 129, which was registered for

11  copyright on April 19, 1948 under registration number B132341, and such

12  copyright was renewed on June 20, 1975 under registration number R608849;

13  Adventure Comics No. 130, which was registered for copyright on May 19,

14  1948 under registration number B137544, and such copyright was renewed on

15  December 24, 1975 under registration number R620946; Adventure Comics No.

16  131, which was registered for copyright on June 21, 1948 under registration

17  number B142664, and such copyright was renewed on December 24, 1975 under

18  registration number R620950; Adventure Comics No. 132, which was registered

19  for copyright on July 21, 1948 under registration number B148381, and such

20  copyright was renewed on December 24, 1975 under registration number

21  R620954; Adventure Comics No. 133, which was registered for copyright on

22  August 18, 1948 under registration number B150760, and such copyright was

23  renewed on December 24, 1975 under registration number R620956, Adventure

24  Comics No. 134; which was registered for copyright on September 21, 1948

25  under registration number B155947, and such copyright was renewed on

26  December 24, 1975 under registration number R620961; Adventure Comics No.

27  135, which was registered for copyright on October 20, 1948 under registration

28

1  number B163757, and such copyright was renewed on December 24, 1975 under

2  registration number R620966.

3       65.    Plaintiffs' Notices of Termination terminated on November 17,

4  2004 all prior grants or purported grants of the renewal copyrights in and to the

5  Siegel Superboy Material; and Plaintiffs thereby recovered on said date

6  exclusive ownership of the Recaptured Copyrights in "Superboy" for their

7  extended renewal terms.

8       66.    As the sole proprietor of the Recaptured Copyrights, Plaintiffs have

9  the rights, among other things, to prepare and exploit derivative works based on

10  the Recaptured Copyrights and/or to license to others the rights to do so.

11      67.    Defendants ongoing exploitations of the "Superboy" mythology,

12  including but not limited to the Superboy Comic Books and other publications,

13  "Superboy" merchandising, animated and live action television programming

14  (e.g., the Smallville Series) copy and are derivative of the Siegel Superboy

15  Material and the Recaptured Copyrights.

16      68.    The preparation, production, reproduction, distribution and/or

17  exploitation by Defendants, their licensees and/or assigns, on or after November

18  17, 2004, of *new* derivative works or products based on the "Superboy"

19  mythology, including, but not limited to, new publications, merchandising,

20  motion pictures, new episodes of the Smallville Series and/or other new

21  derivative television programs infringes Plaintiffs' Recaptured Copyrights.

22      69.    Plaintiffs placed Defendants on notice of such infringements, yet

23  Defendants knowingly and willfully continue to infringe Plaintiffs' Recaptured

24  Copyrights in total disregard of and indifference to Plaintiffs' rights under the

25  Copyright Act.

26      70.    As a direct and proximate result of Defendants' copyright

27  infringements, Plaintiffs have suffered and will continue to suffer severe injuries

28  and harm, much of which cannot be reasonably or adequately measured or

22

1    compensated in money damages if such wrongful conduct is allowed to continue

2    unabated.  The ongoing harm this wrongful conduct will continue to cause

3    Plaintiffs is both imminent and irreparable.  Plaintiffs' injuries and damages

4    include, but are not limited to loss of customers, dilution of goodwill, injury to

5    their business reputation, and diminution of the value of their intellectual

6    property.  Such damages are particularly acute given that the Recaptured

7    Copyrights are of limited duration.

8         71.    Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary

9    injunction, during the pendency of this action, and to a permanent injunction,

10   enjoining Defendants, their officers, agents and employees, and all persons

11   acting in concert with them, from engaging in such further violations of the

12   Copyright Act.

13        72.    Pursuant to 17 U.S.C. § 503 (a) and (b), Plaintiffs are entitled to

14   impound and to have destroyed all such infringing works, copies and materials,

15   including but not limited to all masters, digital and video tapes, film negatives,

16   computer discs or other articles by means of which such infringing copies are

17   being reproduced, as justice requires.

18        73.    Plaintiffs are further entitled to recover from Defendants the

19   damages, including pre-judgment interest it sustained and will sustain, and any

20   income, gains, compensation, profits, and advantages obtained by Defendants as

21   a result of their wrongful acts alleged hereinabove (hereinafter referred to as

22   "Proceeds"); in an amount which cannot yet be fully ascertained, but which shall

23   be assessed at the time of trial.

24        74.    Plaintiffs are entitled to the restitution of all such Proceeds; and by

25   reason of the foregoing and Defendants' resultant unjust enrichment, Plaintiffs

26   are entitled to the imposition of a constructive trust for the benefit of Plaintiffs

27   on all such Proceeds.

28

23

1    75.    Plaintiffs are further entitled to their attorney's fees and full costs

2 pursuant to 17 U.S.C. § 505.

3    **SECOND CLAIM FOR RELIEF**

4    (Declaratory Relief Re:  Termination, 17 U.S.C. § 304(c)

5    - Against All Defendants)

6    76.    Plaintiffs re-allege and incorporate by reference paragraphs 1

7 through 75 inclusive, as though fully set forth herein.

8    77.    By reason of the foregoing facts, an actual and justiciable

9 controversy has arisen and now exists between Plaintiffs and Defendants under

10 Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective

11 rights and interests in and to the copyrights to "Superboy," for which Plaintiffs

12 desires a declaration of rights.

13    78.    Plaintiffs contend and Defendants deny that:

14        a.    Jerome Siegel was the sole proprietor of the copyright(s) in

15 and to the unique character and literary conception of "Superboy," prior to his

16 granting rights in "Superboy" to National Comics Publications, Inc. in the 1948

17 Stipulation;

18        b.    As of the effective Termination Date, November 17, 2004,

19 the Notice of Termination terminated any prior grant(s) by Jerome Siegel of his

20 wholly owned copyrights in and to "Superboy," for the copyrights extended

21 renewal term, to any of the Defendants, their predecessors-in-interest and

22 additional parties served with the Notices of Termination, including, but not

23 limited to, such grant(s) in the 1948 Stipulation;

24        c.    As of November 17, 2004, Plaintiffs exclusively own all

25 right, title and interest in and to the Recaptured Copyrights to "Superboy" for

26 their extended renewal terms.

27        d.    The preparation, production, reproduction, distribution and/or

28 exploitation, by Defendants, their licensees and/or assigns of *new* derivative

24

1  works or products based on the "Superboy" mythology, including, but not

2  limited to, new publications, merchandising, motion pictures, new episodes of

3  the Smallville Series and/or other new derivative television programs, on or after

4  November 17, 2004, without Plaintiffs' authorization, is prohibited under the

5  Copyright Act.

6      79.    A declaration of the Court is necessary pursuant to the Declaratory

7  Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their

8  respective rights and obligations with respect to the Termination and the

9  copyright interests thereby recaptured by Plaintiffs.

10              **THIRD CLAIM FOR RELIEF**

11      (Violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125,

12          Unfair Competition – Against All Defendants)

13      80.    Plaintiffs re-allege and incorporate by reference paragraphs 1

14  through 79 inclusive, as though fully set forth herein.

15      81.    Plaintiffs are informed and believe and thereon allege that

16  Defendants have in connection with tangible goods and products embodying

17  and/or derived from the original "Superboy" elements owned by Plaintiffs

18  ("Superboy Goods") misrepresented in commercial advertising and promotion,

19  to third parties, after and notwithstanding their service with the Termination

20  Notice and the binding findings of fact and conclusions in the 1947 Action, that

21  Defendants own such goods and/or all rights underlying such goods and

22  willfully omitted disclosure of the Termination Notice to such third parties, and

23  that based upon such false claims, representations and wrongful omissions

24  Defendants have induced others to enter into improper agreements with them.

25      82.    Defendant DC and Warner Bros. Consumer Products (a wholly

26  owned division of Defendant Warner Bros.) regularly render licensing services

27  with respect to Superboy Goods.  Plaintiffs are informed and believe and thereon

28  allege that Defendants have misrepresented in their commercial advertising and

25

1 promotion of such services to third parties that they have the right to grant

2 licenses to "Superboy" in the United States and have willfully omitted disclosure

3 of the Termination Notice to such third parties, and that based upon such false

4 claims, representations and wrongful omissions have induced such third parties

5 to enter into improper agreements with them.

6      83.    Plaintiffs are informed and believe and thereon allege such false

7 claims, representations and wrongful omissions misrepresented in commercial

8 advertising and promotion the nature, characteristics and qualities of such

9 Superman Goods, Defendants' licensing services or commercial activities.

10      84.    Plaintiffs are informed and believe and thereon allege such false

11 claims, representations and wrongful omissions were conducted by Defendants

12 or each of them with a willful intention to mislead buyers or potential buyers.

13      85.    Plaintiffs are informed and believe and thereon allege that

14 Defendants used such false or misleading descriptions, representations and

15 omissions of fact regarding such Superboy Goods, Defendants' licensing

16 services or commercial activities in interstate commerce to induce others to enter

17 into improper contracts or other forms of business arrangements with

18 Defendants to exploit Superboy Goods in the United States.

19      86.    Such use of false or misleading descriptions or representations of

20 fact in interstate commerce is in opposition to the protection of the public

21 interest.

22      87.    Defendants wrongful conduct has proximately caused and will

23 continue to cause Plaintiffs substantial injury and damage including, without

24 limitation, loss of customers, dilution of goodwill, injury to their business

25 reputation, lost profits and diminution of the value of their interests in

26 "Superboy" and related commercial activities.

27      88.    The ongoing harm this wrongful conduct will cause to Plaintiffs is

28 both imminent and irreparable, and the amount of damage sustained by Plaintiffs

1  will be difficult to ascertain if such wrongful conduct is allowed to continue

2  unabated.

3      89.    By reason of the foregoing, Defendants have violated and continue

4  to violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

5      90.    Plaintiffs are entitled to an injunction, during the pendency of this

6  action, and permanently, restraining Defendants, their officers, agents and

7  employees, and all persons acting in concert with them, from misrepresenting in

8  connection with Superboy Goods, Defendants' licensing services and

9  commercial activities that they continue to own all rights to "Superboy" and

10 from engaging in any further violations of the Lanham Act.

11     91.    Plaintiffs have no adequate remedy at law with respect to these

12 ongoing violations.

13     92.    Plaintiffs are further entitled to recover from Defendants under 15

14 U.S.C. § 1117(a) up to three times the damages they sustained and will sustain

15 and any income, gains, profits, and advantages obtained by Defendants as a

16 result of their wrongful acts and omissions alleged hereinabove, plus reasonable

17 attorneys' fees and costs, in an amount which cannot yet be fully ascertained,

18 but which shall be assessed at the time of trial.

19                    **FOURTH CLAIM FOR RELIEF**

20     (Violation of California Business and Professions Code, §§ 17200 *et seq.*;

21                Unfair Competition - Against All Defendants)

22     93.    Plaintiffs re-allege and incorporate herein by reference the

23 allegations set forth in paragraphs 1 through 92, inclusive, as though fully set

24 forth herein.

25     94.    Plaintiffs are informed and believe and thereon allege that in

26 addition to the wrongful acts and omissions alleged hereinabove and

27 incorporated herein, despite being served with the Termination Notice,

28 Defendant Warner Bros.' and its parent, Defendant Time Warner, have

27

1 intentionally omitted from Time Warner's Annual Reports on Form 10-K,

2 Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and other

3 publicly reported documents any and all mention of the Termination, even

4 though the Termination drastically curtails Defendants' ability to continue to

5 exploit "Superboy" -- one of their more valuable intellectual properties.  Such

6 systematic public misrepresentations by omission are likely to deceive, cause

7 confusion and mistake and run counter to the public interest.

8      95.   In addition to the wrongful acts and omissions alleged hereinabove

9 and incorporated herein, Defendants wrongful conduct amounts to the bodily

10 appropriation of the Siegel Superboy Material and to "reverse passing off,"

11 depriving Plaintiffs of the full use and value of the "Superboy" property and of

12 attendant goodwill, and resulting in likely confusion of and a fraud on the

13 public.  Defendants, unless restrained, will likely continue to misrepresent and

14 pass off "Superboy" to be their sole property and creation.

15      96.   Plaintiffs are further informed and believe and thereon allege that

16 Defendants' attempts to pass off "Superboy" as Defendants' sole property for a

17 much longer duration than Defendants controlled the property are calculated to

18 deceive Plaintiffs' potential licensors and/or customers and members of the

19 public.

20      97.   Defendants' wrongful conduct, acts, and omissions alleged

21 hereinabove constitute unlawful, unfair business practices and unfair

22 competition under California Business and Professions Code §§ 17500 *et seq.*,

23 and under the common law.

24      98.   As a direct and proximate result of Defendants' unfair business

25 acts, practices and omissions as alleged hereinabove, Plaintiffs are entitled to

26 recover their share of any income, gains, compensation, profits and advantages

27 obtained, received or to be received by Defendants, or any of them, arising from

28 the exploitation after the Termination Date of any element of the "Superboy"

---

1  mythology protected by the Recaptured Copyrights, excluding derivative works

2  produced prior to the Termination Date; and are entitled to an order requiring

3  Defendants, jointly and severally, to render an accounting to ascertain the

4  amount of such proceeds.

5      99.    As a direct and proximate result of Defendants' wrongful conduct,

6  acts and omissions pleaded hereinabove, Plaintiffs have been damaged, and

7  Defendants will be unjustly enriched during the pendency of this action, in an

8  amount that shall be assessed at trial for which damages and/or restitution and

9  disgorgement is appropriate.  Such damages and/or restitution and disgorgement

10 should include a declaration by this Court that Defendants are jointly and

11 severally the constructive trustee for the benefit of Plaintiffs and an order that

12 Defendants convey to Plaintiffs all Proceeds received by Defendants that are

13 attributable to the wrongful exploitation of "Superboy," excluding derivative

14 works produced prior to the Termination Date.

15     100.   Defendants' wrongful conduct, acts and omissions have

16 proximately caused and will continue to cause Plaintiffs substantial injury and

17 damage including, without limitation, loss of customers, dilution of goodwill,

18 injury to Plaintiffs' reputation, and diminution of the value of Plaintiffs'

19 Recaptured Copyrights.  The harm this wrongful conduct causes to Plaintiffs is

20 ongoing and irreparable, and the amount of damage sustained by Plaintiffs will

21 be difficult to ascertain if such wrongful conduct is allowed to continue without

22 restraint.

23     101.   Plaintiffs are entitled to an injunction, during the pendency of this

24 action, and permanently (i) enjoining Defendants, their officers, agents and

25 employees, and all persons acting in concert with them, from engaging in such

26 further unfair business practices and unfair competition under California

27 Business and Professions Code §§ 17500 *et seq.*, and under the common law;

28 and (ii) requiring Defendants, their licensees, assigns and all persons acting in

29

1  concert with them, to properly designate Jerome Siegel on all "Superboy"

2  publications, products, derivative motion picture and television productions,

3  advertising and promotional materials as the creator of "Superboy."

4      102.  Plaintiffs have no adequate remedy at law with respect to such

5  ongoing unlawful conduct.

**FIFTH CLAIM FOR RELIEF**

(Injunctive Relief – Against All Defendants)

8      103.  Plaintiffs re-allege and incorporate herein by reference the

9  allegations set forth in paragraphs 1 through 102, inclusive, as though fully set

10  forth herein.

11      104.  Unless enjoined and restrained by order of the Court, Defendants'

12  conduct will continue to infringe Plaintiffs' Recaptured Copyrights.

13      105.  By reason of Defendants' blatant copyright infringement and

14  Defendants' unfair trade practices and unfair competition against Plaintiffs,

15  Plaintiffs have sustained and, unless and until Defendants are enjoined, will

16  continue to sustain substantial and irreparable injury, loss and damage, including

17  repeated infringement of their copyrights, diminution of the value of their

18  copyrights, loss of customers, dilution of goodwill, and injury to their business

19  reputation.

20      106.  Plaintiffs have no adequate remedy at law for many of their

21  ongoing injuries in that such injuries cannot be reasonably, adequately or

22  precisely measured or compensated in damages if such wrongful conduct is not

23  restrained and allowed to continue unabated.

24      107.  Plaintiffs are entitled to a preliminary injunction during the

25  pendency of this action and a permanent injunction ordering that Defendants,

26  their agents, employees, licensees and assigns (i) be enjoined from producing,

27  reproducing and exploiting or authorizing the production, reproduction or

28  exploitation, after the Termination Date, of new "Superboy" derivative works

30

---

1  including, but not limited to, new "Superboy" merchandising, motion pictures,

2  new episodes of the Smallville Series and/or other derivative television

3  programs; and (ii) be required to credit Jerome Siegel as the creator of

4  "Superboy" on all "Superboy" publications, products, derivative motion picture

5  and television productions, advertising and promotional materials.

6  WHEREFORE, Plaintiffs pray for relief as follows:

7  **PRAYER FOR RELIEF**

8  ON THE FIRST CLAIM FOR RELIEF

9  108.  For an order preliminarily during the pendency of this action and

10  thereafter, permanently, enjoining Defendants, their officers, agents, employees,

11  licensees and assigns, and all persons acting in concert with them, (i) from

12  infringing the Recaptured Copyrights in "Superboy" in any manner, and (ii)

13  from engaging in or authorizing the production, reproduction, distribution and/or

14  exploitation of new "Superboy" derivative works, on or after November 17,

15  2004, including, but not limited to, new "Superboy" publications,

16  merchandising, motion pictures, new episodes of the Smallville Series and other

17  derivative television programs, without Plaintiffs' express written consent;

18  109.  For an order, pursuant to 17 U.S.C. § 503(a) and (b), impounding

19  and requiring the destruction of all such infringing works, copies and materials

20  produced on or after November 17, 2004, including but not limited to all

21  masters, digital and video tapes, film negatives, computer discs or other articles

22  by means of which such infringing copies are being reproduced, as justice

23  requires;

24  110.  For compensatory and consequential damages, according to proof

25  in an amount determined at trial, together with interest thereon as provided by

26  law;

27  111.  For an accounting and restitution to Plaintiffs of all gains,

28  compensation, profits and advantages Defendants have derived from their

31

1 infringement of the Recaptured Copyrights, including, but not limited to, their

2 production, distribution and exploitation on or after November 17, 2004 of new

3 derivative works based thereon;

4      112.  For the imposition of a constructive trust for the benefit of Plaintiffs

5 on any and all such unlawful gains, compensation, profits and advantages

6 received and to be received by Defendants;

7      113.  For Plaintiffs' attorney's fees and full costs pursuant to 17 U.S.C. §

8 505; and

9      114.  For such other and further relief and remedies available under the

10 Copyright Act, 17 U.S.C. §§ 101 *et seq.*, which the Court may deem just and

11 proper.

12 ON THE SECOND CLAIM FOR RELIEF

13      115.  For a declaration as follows:

14        a.    That pursuant to the Copyright Act, 17 U.S.C. § 304(c),

15 Plaintiffs validly terminated, effective November 17, 2004, all prior grants,

16 assignments or transfers, to any of the Defendants and any of their predecessors-

17 in-interest, of the renewal copyrights in and to the Siegel Superboy Material and

18 the Recaptured Copyrights;

19        b.    That, as of November 17, 2004, Plaintiffs exclusively own

20 the Recaptured Copyrights; and that on or after that date all pertinent copyright

21 notices shall bear their names;

22        c.    That Defendants' exploitations of the "Superboy"

23 mythology, including but not limited to the Superboy Comic Book,

24 merchandising, animated and live action television programming, including the

25 Smallville Series, are derivative of the Siegel Superboy Material;

26        d.    That the preparation, production, reproduction, distribution

27 and/or exploitation, by Defendants, their licensees and/or assigns of *new*

28 derivative works or products based on or using the "Superboy" mythology in

32

1  any and all media, including, but not limited to, new publications,

2  merchandising, motion pictures, new episodes of the Smallville Series and/or

3  other new derivative television programs, on or after November 17, 2004,

4  without Plaintiffs' authorization, is prohibited under the Copyright Act.

5           ON THE THIRD CLAIM FOR RELIEF

6        116.   For an order preliminarily and thereafter permanently enjoining

7  Defendants from making such false or misleading descriptions, representations

8  and omissions of fact in connection with Superboy Goods, Defendants' services

9  and commercial activities and from engaging in any further violations of the

10  Lanham Act;

11       117.   For up to three times the damages Plaintiffs sustained and will

12  sustain and any income, gains, profits, and advantages obtained by Defendants

13  as a result of their violations of the Lanham Act in an amount which cannot yet

14  be fully ascertained, but which shall be assessed at the time of trial; and

15       118.   For such other and further relief and remedies available under the

16  Lanham Act, 15 U.S.C. §§ 1125 and 1117 which the Court may deem just and

17  proper.

18           ON THE FOURTH CLAIM FOR RELIEF

19       119.   For an accounting of any and all Proceeds;

20       120.   For the imposition of a constructive trust for the benefit of Plaintiffs

21  on any and all unlawful Proceeds received and to be received by Defendants;

22       121.   For restitution and disgorgement to Plaintiffs of any and all

23  unlawful Proceeds;

24       122.   For an order preliminarily during the pendency of this action and

25  thereafter, permanently, (i) enjoining Defendants, their officers, agents,

26  employees, licensees and assigns, and all persons acting in concert with them,

27  from engaging in such further unfair business practices and unfair competition

28  under California Business and Professions Code §§ 17500 *et seq.*, and/or under

1 || the common law, as alleged hereinabove; and (ii) requiring them to properly

2 || designate Jerome Siegel as the creator of "Superboy" on all "Superboy"

3 || publications, products, derivative motion picture and television productions,

4 || advertising and promotional materials;

5 ||        123.   For compensatory and consequential damages according to proof as

6 || shall be determined at trial;

7 ||        124.   For such other and further relief and remedies available under

8 || California Business and Professions Code, §§ 17200 *et seq*. and/or the common

9 || law which the Court may deem just and proper.

10 ||                        ON THE FIFTH CLAIM FOR RELIEF

11 ||        125.   For an order preliminarily during the pendency of this action and

12 || thereafter, permanently, (i) enjoining Defendants, their officers, agents,

13 || employees, licensees and assigns, and all persons acting in concert with them,

14 || from producing, exploiting or authorizing the production or exploitation of new

15 || derivative works based on the "Superboy" mythology, on or after November 17,

16 || 2004, including, but not limited to, new "Superboy" publications,

17 || merchandising, motion pictures, new episodes of the Smallville Series and other

18 || derivative television programs; and (ii) requiring Defendants to credit Jerome

19 || Siegel as the creator of "Superboy" on all "Superboy" publications, products,

20 || derivative motion picture and television productions, advertising and

21 || promotional materials.

22 ||                        ON ALL CLAIMS FOR RELIEF

23 ||        126.   For Plaintiffs' costs of suit;

24 ||        127.   For interest at the highest lawful rate on all sums awarded Plaintiffs

25 || other than punitive damages;

26 ||        128.   For reasonable attorneys' fees; and

27 ||        129.   For such other and further relief as the Court deems just and

28 || appropriate.

---

First Amended Suppl. Complaint for Copyright Infringement, Decl. Relief, Lanham Act and Unfair Comp.

1 | DATED: October 17, 2005          LAW OFFICES OF MARC TOBEROFF, PLC

2

3                                    By: _____

4                                              Marc Toberoff

5                                    Attorneys for Plaintiffs and Counterclaim
                                     Defendants JOANNE SIEGEL and
6                                    LAURA SIEGEL LARSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35

## JURY TRIAL DEMANDED

Plaintiffs hereby request a trial by jury on each claim for relief alleged in the Complaint.

DATED:  October 17, 2005        LAW OFFICES OF MARC TOBEROFF, PLC

By: _____
                    Marc Toberoff

Attorneys for Plaintiffs and Counterclaim
Defendants JOANNE SIEGEL and
LAURA SIEGEL LARSON

36

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 1999 Avenue of the Stars, Suite 1540, Los Angeles, California 90067.

On October 17, 2005, I served the attached documents described as **FIRST AMENDED SUPPLEMENTAL COMPLAINT** on all interested parties in this action by placing __ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

David L. Burg
Weissmann Wolff Bergman Coleman Grodin & Evall
9665 Wilshire Blvd., Ninth Floor
Beverly Hills, CA 90212


[X]  :BY MAIL:

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on October 17, 2005, in Los Angeles, California.

Nicholas C. Williamson