1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                     - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                     - - -

7    JOANNE SIEGEL, ET AL.,            )
                                       )
8                      Plaintiffs,     )
                                       )
9            vs.                       )   No. CV 04-08776-SGL
                                       )
10   TIME WARNER, INC., ET AL.,        )
                                       )
11                     Defendants.     )   Cross Motions
     _____)   to Compel
12

13

14           Reporter's Transcript of Proceedings

15               Riverside, California

16            Wednesday, January 14, 2009

17                   1:32 P.M.

18

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
           Federal Official Court Reporter
24           3470 12th Street, Rm. 134
           Riverside, California  92501
25               (951) 274-0844
             WWW.THERESALANZA.COM

1    APPEARANCES:

2

3    On Behalf of Plaintiffs:

4
                        LAW OFFICES OF MARC TOBEROFF
5                       BY:  Marc Toberoff
                        BY:  Nicholas C. Williamson
6                       2049 Century Park East,
                        Suite 2720
7                       Los Angeles, California  90067
                        310-246-3100
8

9
      on behalf of Defendants:
10

11                      WEISSMANN WOLFF BERGMAN COLEMAN
                         GRODIN & EVALL LLP
12                      BY:  Michael Bergman
                        9665 Wilshire Boulevard,
13                      Ninth Floor
                        Beverly Hills, California  90212
14                      310-858-7888

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                                                    Page

3    MOTIONS.......................................    4

```
 1      Riverside, California; Wednesday, January 14, 2009; 1:32 P.M.

 2                              -oOo-

 3           THE CLERK:  Calling calendar item two in the case of

 4   Joanne Siegel, etc., versus Warner Brothers Entertainment Inc.,

 5   etc., case number CV 04-08400-SGL(RZx).                          00:11

 6           May we have counsel please come forward and state

 7   your appearances for the record.

 8           MR. BERGMAN:  Good afternoon, your Honor.

 9           Michael Bergman for the defendants.

10           MR. TOBEROFF:  Marc Toberoff for the plaintiff, along   00:12

11   with my associate Nicholas Williamson.

12           THE COURT:  Good afternoon to you both.

13           I'm sorry about the terrible traffic conditions that

14   you encountered coming out here.

15           MR. BERGMAN:  Thank you, your Honor.                     00:12

16           I apologize to the Court and to opposing counsel.

17           THE COURT:  No apology necessary.  Unfortunately,

18   that's part of living and driving in Southern California.

19           I have before me two discovery motions.  I've

20   reviewed the papers.  Let's begin with the defendant's motion   00:12

21   to produce this letter.

22           I guess my first question for Warner Brothers on this

23   is this:  The characterization of the letter by Mr. Toberoff in

24   his papers characterizes it as a communication essentially

25   between counsel and a client.  I don't find anywhere where you   00:12
```

1    dispute that characterization.

2            Am I mistaken?

3        **MR. BERGMAN:**  No, your Honor, you're not.  But I'm in

4    a position where, due to the confidentiality agreement, I

5    cannot disclose, absent Mr. Toberoff relieving me of that          00:13

6    confidentiality, how Mr. Toberoff characterized the document in

7    the letter which disclosed it.

8            I can tell the Court that it was not described in

9    Mr. Toberoff's letter as a communication with clients.

10       **THE COURT:**  It was not described in Mr. Toberoff's          00:13

11   letter --

12       **MR. BERGMAN:**  The letter to me in which he disclosed

13   what the document was.

14       **THE COURT:**  Fair enough.  But the characterization I

15   have from Mr. Toberoff at this point is that, and I'll just        00:13

16   quote it:  "The privileged document consists of a communication

17   between plaintiffs, the executor of the estate of Superman

18   co-creator Joe Shuster, and plaintiff's counsel who represents

19   both parties, regarding settlement of this action."

20           **MR. BERGMAN:**  Based on --                              00:14

21       **THE COURT:**  I don't have the letter.

22            You don't have the letter, I presume.

23       **MR. BERGMAN:**  That's correct.

24       Well, I have the letter, Your Honor.

25       **THE COURT:**  That's right.  You do have the letter.         00:14

 1    Of course.

 2         **MR. BERGMAN:**  Based on what Mr. Toberoff stated in

 3    the letter, his characterization of a communication with

 4    clients is not correct.  It is characterized as something else;

 5    something else which I will represent to the Court falls                    00:14

 6    clearly, if it's producible, within the two categories of the

 7    requests that we have outlined.

 8         Beyond that, there's really nothing.

 9         **THE COURT:**  That, to me, is the turning point, the

10    tipping point of this argument right here; so Mr. Toberoff, I             00:14

11    need your response.

12         I would ordinarily simply accept the representation

13    of any counsel before me that a letter is privileged

14    communication.  This is a unique situation where, because it

15    was in a settlement conference, defense counsel sees it.  He is          00:15

16    disputing your characterization.

17         I would rather not look at this letter myself,

18    particularly since we have a bench trial starting in a few

19    weeks, but there may not be any other way for me to address

20    this than to do so.                                                       00:15

21         I'll give you an opportunity to respond.

22         **MR. TOBEROFF:**  Your Honor, this is absolutely a

23    privileged communication, attorney-client privilege, joint

24    interest privilege, as a communication between parties with an

25    interest in litigation and attorney-work product.  The document         00:15

```
 1   was signed by me summarizing discussions between my clients.
 2   There's no way this document would not be protected by the
 3   attorney-client privilege.
 4          The document was written a week before the settlement
 5   mediation solely for the purposes of advancing settlement.  It     00:15
 6   reflects discussions between myself and my clients regarding
 7   settlement and settlement strategy.
 8          THE COURT:  Without getting into the substance of the
 9   document, is it fair to say -- and perhaps this explains your
10   different positions -- is it fair to say, Mr. Toberoff, that it     00:16
11   is not self evident from the letter itself that it is
12   representing a communication between a lawyer and a client and
13   that is perhaps why defense counsel looks at it and does not
14   see it that way, but you, being in your position, know that it
15   is?                                                                 00:16
16          Is that what it is?
17          MR. TOBEROFF:  Let me correct a misimpression I
18   believe the Court has.
19          Defendants have never seen the document; all they
20   received from me was -- they never saw --                          00:16
21          THE COURT:  They never saw the letter.
22          MR. TOBEROFF:  They never saw the document on which
23   to base a claim that it's not privileged.  I simply described
24   it in a different letter after we entered into a
25   confidentiality agreement which took the JAMMS confidentiality     00:16
```

```
 1    settlement agreement, actually beefed up those provisions;

 2    included in the confidentiality agreement was the provision

 3    that any communications in the course of mediation marked

 4    'settlement, for confidential purposes only' --

 5             THE COURT:  I read that.                                    00:17

 6             MR. TOBEROFF:  So I wrote a letter, 'settlement, for

 7    confidential purposes only,' and in there I talked about this

 8    communication because it bore on -- it was a discussion between

 9    my clients regarding settlement, and I gave some of the results

10    of that.  Based on that, they are demanding the underlying       00:17

11    communication.

12             THE COURT:  I have to stop you and go back to defense

13    counsel.

14             Did you see the letter or did you just see a letter

15    describing the letter?                                            00:17

16             MR. BERGMAN:  Your Honor, I did not see the letter

17    which we are calling the undisclosed document; it has not been

18    produced to us.

19             THE COURT:  I'm sorry, then.  I thought you just told

20    me that you did see the letter.                                   00:17

21             MR. BERGMAN:  No, your Honor.  What I meant -- and

22    perhaps I misspoke.

23             Mr. Toberoff, the day after we signed the

24    confidentiality agreement, sent me a letter; that letter in

25    redacted form is attached to my declaration.                      00:18
```

1          THE COURT:  Okay.

2          MR. BERGMAN:  That letter, which is what's called the

3   transmittal letter or the disclosure letter, the disclosure

4   letter from Mr. Toberoff to me purports to describe the

5   document which we are seeking production of.  As described in          00:18

6   Mr. Toberoff's letter to me, it does not appear to be a

7   communication between a lawyer and a client.  It is

8   characterized by Mr. Toberoff as being something much different

9   than that; something which would, unquestionably, if it were

10  not privileged, be producible in response to request number 63.    00:18

11         THE COURT:  Fair enough.  That would provide you

12  basis for having brought your motion.  I understand that.  But

13  now we're at a different juncture, and I'm having counsel

14  characterize the undisclosed document itself.

15         So my question is:  Is there any reason at this point    00:19

16  to question counsel's clarified clarification of the document

17  in question?

18         MR. BERGMAN:  Well, with all respect, your Honor, the

19  only reason would be is that it is contrary to the way

20  Mr. Toberoff described the document when he disclosed its          00:19

21  existence to us.

22         THE COURT:  Can you explain that, Mr. Toberoff?

23         MR. TOBEROFF:  That's an incorrect statement.

24         THE COURT:  How did you describe it in the letter?

25         Could I see that?  Is that the unredacted version?          00:19

1      **MR. BERGMAN:**  That's correct.

2          **THE COURT:**  Let me see the unredacted version.

3          This is the letter that was disclosed describing the

4  letter?

5          **MR. TOBEROFF:**  But that discloses the contents of the

6  letter.

7          **THE COURT:**  It does?

8          **MR. TOBEROFF:**  Yes; that's totally covered by our

9  confidentiality agreement --

10          **THE COURT:**  Okay.  Then I don't want to see that.

11      **MR. TOBEROFF:** -- which they are not supposed to use

12  anything in settlement in this litigation, which they are now

13  attempting to do by putting this in front of you.

14          I'll say this:  The letter that I sent does not

15  describe every aspect of this communication, nor does it attach

16  the communication.  It describes some of the results of the

17  communication as it bears on settlement.

18          The communication is signed by me.  It is signed by

19  me, and it refers to discussions that I had with my clients

20  regarding settlement.  How that cannot be privileged, I do not

21  know.  Even if it had not been signed by me but merely

22  reflected a communication between two parties with an interest

23  in litigation regarding settlement or regarding settlement

24  strategy, that would be protected by the joint interest

25  privilege.

00:19
00:19
00:20
00:20
00:20

1          **THE COURT:**  Thank you, Counsel.

2          Anything further?

3          **MR. BERGMAN:**  I'm at a real disadvantage here.

4          **THE COURT:**  I know you are.  The only one who is at

5     more of a disadvantage is the Court.                              00:20

6          **MR. BERGMAN:**  I understand.

7          Would your Honor permit me to use the one-word

8     adjective with which Mr. Toberoff described the letter?

9          **MR. TOBEROFF:**  No I will not.

10          You're breaching the confidentiality--                       00:21

11          **THE COURT:**  Counsel, stop.  Stop.  We have a lot of

12     litigation together.  I don't want to see that happen again.

13          You address the Court one at a time.

14          Understood?

15          **MR. TOBEROFF:**  Sure.                                      00:21

16          **THE COURT:**  No.

17          Is there anything further on this point?

18          **MR. BERGMAN:**  Only, your Honor, the obvious point

19     that if there is an agreement in existence which is not

20     privileged which has never before been disclosed and it's        00:21

21     disclosed for the first time as part of a mediation process,

22     that does not make the document itself privileged.

23          **THE COURT:**  I understand that.

24          Mr. Toberoff, I've heard enough.

25          **MR. TOBEROFF:**  If I may just --                          00:21

1          **THE COURT:**  I said I've heard enough.

2          The motion is denied.

3          I will accept Mr. Toberoff's clarification of the

4    letter or characterization of the letter.  I understand without

5    having seen it that defense received a partial rendering of          00:22

6    that letter that led them to believe that it was not

7    privileged.  I can understand why they brought this motion and

8    I certainly do not fault them for doing that.

9          However, I will accept Mr. Toberoff's

10   characterization of it as a privileged document, as an officer      00:22

11   of the court.  I have every reason to believe that he is the

12   only person who has access to the underlying privileged

13   document; is fairly and accurately representing that to the

14   Court; and I will rely on that representation.

15         Part of this is motivated simply by the Court's              00:22

16   commitment to maintaining the settlement privilege.  It was the

17   Court that encouraged you to engage in that settlement effort,

18   and I want to maintain the confidences that were agreed to

19   during that period.  So that motion is denied.

20         Let's take up the plaintiff's motion with respect to        00:23

21   compelling documents.

22         I guess I need clarification, perhaps from both sides

23   on this.  As I understand it, there were three or four

24   different document productions made by the defense.  And if I

25   am understanding the plaintiff's motion correctly, you're         00:23

```
 1   simply asking that the defense supplement any and all requests

 2   for which supplemental documentation exists.

 3          Is that correct, Mr. Toberoff?

 4       MR. TOBEROFF:  That's correct, your Honor.

 5       THE COURT:  Okay.                                        00:23

 6          That's required by the local rules regardless of any

 7   requests or regardless of any letters or specific meet and

 8   confers; that's something which is an ongoing obligation which

 9   I know the defense understands and appreciates; so I don't see

10   what the problem is.                                         00:23

11       MR. BERGMAN:  Indeed, we do understand that, your

12   Honor.  And as a matter of fact, the documents have been

13   produced, and our papers reflect that.

14       THE COURT:  I understand documents have been

15   produced.  My question to you is have supplemental documents   00:24

16   been produced in all categories for which previous documents

17   have been produced, so as to update them and fulfill your

18   obligations under the Federal Rules of Civil Procedure?

19       MR. BERGMAN:  Yes, Sir.

20          And the reason why -- just to explain the             00:24

21   circumstances, if I may briefly, your Honor -- why we did not

22   produce these requested documents immediately is the narrow

23   focus of the February 3rd trial.  Mr. Toberoff and we had

24   agreed 60 days prior to each trial, we would supplement our

25   prior productions relating to the issue to be tried.         00:24
```

1          The issues to be tried on February 3rd are either

2   alter ego or sweetheart deal; that is something that's going to

3   be addressed in the motion in limine.

4          **THE COURT:**  I've gone through the motions in limine,

5   the motions in limine/motions for reconsideration of the                00:25

6   Court's summary judgment order, and I will deal with those on

7   Monday, January 26th.

8          **MR. BERGMAN:**  Okay.

9          The documents which Mr. Toberoff specified in his

10  letter which began this process, which is Exhibit H to            00:25

11  Mr. Toberoff's declaration, his meet and confer letter, if you

12  will, lists the categories of documents that he wanted

13  supplemented.  With one exception, the 12 or 13 categories all

14  relate to the exploitation in one way or another of either the

15  "Superman Returns" film or "Smallville", documents pertaining          00:25

16  to its exhibition on ABC to its syndication to independent

17  television stations.

18          None of that material is relevant to the issue of

19  "are these contracts sweetheart deals?"  It has nothing do with

20  that subject.  It has nothing do with the alter ego subject.           00:26

21  That was our basis for not producing the documents in the first

22  instance.  We reached the point where we realized that the

23  fight was not worth the fight, and we produced all of the

24  documents we had.

25          If I'm not mistaken, as I read Mr. Toberoff's               00:26

1  supplemental brief, it appears that the only thing he's

2  complaining of now is that we did not provide drafts and

3  correspondence pertaining to the agreements which we did

4  produce in the supplemental production, one of them being an

5  agreement with Warner Brothers consumer products that had          00:26

6  literally been executed on December 15th or 16th, after the

7  date to produce, and we've produced it.

8          **THE COURT:**  I guess my concern is, and I want to make

9  sure I'm being clear, I don't want Mr. Toberoff's specific

10  requests and your satisfaction of those specific requests to be    00:27

11  viewed as satisfying your ongoing obligations to supplement for

12  the entire category of requests that have been made and to

13  which you have produced documents in the past.  And that's the

14  impression that I got from reading that correspondence and your

15  responses.                                                         00:27

16          I want it understood that if there's an agreement

17  between counsel that we're going to focus on discovery for the

18  trial that we have on February 3rd now, that makes sense to me.

19  But at some point in time, sooner as opposed to later, there

20  needs to be a full supplemental production on the part of          00:27

21  Warner Brothers for every category for which they have

22  previously produced documents to the extent that they have

23  supplemental documents.  That's understood.

24          **MR. BERGMAN:**  That is understood, and I assume the

25  same thing applies to plaintiffs.                                  00:28

1          **THE COURT:**  Of course.  Rules apply to both sides.

2          So let me hear from Mr. Toberoff.

3          If counsel understands that obligation, do you have

4   this agreement to cabin off the discovery in anticipation of

5   the February 3rd trial?                                          00:28

6          What exactly is it that you're seeking from the Court

7   to order in light of counsel's representation that he

8   understands his obligations to supplement to the extent there

9   are supplemental documents.

10          **MR. TOBEROFF:**  First of all, it's incorrect that they   00:28

11   have produced all documents.

12          Even though it's not plaintiff's burden to pinpoint

13   documents they have not seen yet but to give requests for

14   categories to which they need to respond, I can think of a few

15   areas where they have not produced documents where documents   00:28

16   would exist.

17          Since 2006, the last production, there have been

18   additional Superman agreements and amendments to existing

19   agreements.  They produced those finally on December 17th, but

20   they did not produce drafts showing the negotiating history of   00:29

21   those agreements, which are obviously relevant to an

22   examination of whether agreements are entered into at arms'

23   length.

24          Previously, in their prior production they produced

25   drafts and correspondence, but in their supplemental they did   00:29

not supplement by producing drafts and correspondence of new

agreements and amendments; so that's one area that I can think

of.

Another is for over two years there have been

internal memorandum of D.C. and Warner Brothers and

correspondence between D.C. and Warner Brothers regarding their

Superman agreements and regarding their relationship which are

all very relevant to the upcoming alter ego trial.  They have

not produced any internal memorandum or correspondence which

they must produce.

I need to take this back, because this is really not

a casual thing; this is a bigger problem and should not be

treated in the casual manner advocated by defendants.

I spent about four to five months with them prior to

arriving at this agreement, meeting and conferring about

supplementation, because I was very concerned about it.  In

fact, we had to bring a prior motion to compel where we served

our portion of a joint stipulation, and it was only after that

that they finally agreed to supplement 60 days before trial.

That date was calculated to also be before the LR 16 when each

side had to basically earmark their evidence and plan out their

trial strategy.

We finally arrive at this discovery agreement -- and

the rules are meant to promote exactly this type of

compromise -- and they willfully breached the agreement.  When

```
 1   I address it, Mr. Bergman is evasive.  I bring it up again

 2   on -- we comply with the agreement on November 21st.  Not only

 3   do we supplement with our prior production, but we supplement

 4   by providing all documents we intend to rely upon at trial.

 5           I bring it up.  They are evasive.  Then on                    00:31

 6   December 2nd, they say flat out, 'we're not supplementing.'

 7   December 8th, at another meet and confer regarding motions in

 8   limine, they say 'we are not supplementing.'  Then on

 9   December 17th at 7:00 p.m., a messenger is sent over to the

10   office; the next day the motion in limine on this very subject    00:31

11   is due, they suddenly make a selective production.

12           This is just flat out wrong.

13           And they did it to disrupt their trial preparation,

14   to disrupt our motion to compel on the subject, and to disrupt

15   their motion in limine on the subject.                             00:31

16           In that supplementation, rather than supplement

17   within the responsive framework of requests and their prior

18   production, as your Honor has referred to, they simply take my

19   meet and confer letter which specifically mentioned the

20   relevant requests that are relevant to the alter ego trial, and   00:32

21   instead of focusing on documents responsive to those requests,

22   they say 'we disagree that we have any duty to supplement,' and

23   then they selectively go through some of the examples I've

24   given of what would be responsive documents and they narrow

25   that list and claim they have supplemented.                        00:32
```

1          This is improper.  And because they have breached an

2     expressed agreement, we believe they need to be ordered by the

3     Court to supplement, if not sanctioned, for their behavior.

4          **THE COURT:**  At this point, though, you do agree that

5     there is this agreement in terms of narrowing the production to          00:32

6     documents that are relevant to the February 3rd trial; is that

7     correct?

8          **MR. TOBEROFF:**  Absolutely.  And we gave them a list

9     of those requests which are relevant to this first phase of the

10    trial.                                                                    00:32

11         **THE COURT:**  Very well.

12         And Counsel, you agree with this?

13         **MR. BERGMAN:**  I'm not sure what the 'this' is, your

14    Honor.

15         **THE COURT:**  'This' being that you have a duty to          00:33

16    supplement all document requests that are related to this

17    phase, this trial.

18         **MR. BERGMAN:**  Unquestionably.

19         **THE COURT:**  And you have made that production.

20         **MR. BERGMAN:**  I believe that we have produced          00:33

21    everything that Mr. Toberoff has identified.

22         **THE COURT:**  That wasn't the question I asked.

23         You're doing it again what you did in the papers, and

24    that's really causing me to think that you have not done what I

25    asked.                                                                    00:33

1          Have you produced supplements for every document

2    request that is relevant to the February 3rd trial?

3          It's a yes or no.

4          **MR. BERGMAN:**  Yes.

5          **THE COURT:**  I want you to make sure of that.          00:33

6          **MR. BERGMAN:**  Yes, sir.

7          **THE COURT:**  Because of your equivocation, I'm going

8    to give you one week to make sure of that.

9          Today is the 14th, you have to the 21st; so you have

10   one week to reaffirm, to make sure, that you have supplemented   00:33

11   every category.  Not just what Mr. Toberoff has identified, but

12   every category that is relevant to the February 3rd trial.

13         And more than that, I'm going to accept your

14   representation today that you have done so.  Nothing that you

15   produce after today is going to be used in the February 3rd     00:34

16   trial by Warner Brothers.

17         **MR. BERGMAN:**  Yes, sir.

18         **THE COURT:**  Anything further, Mr. Toberoff?

19         **MR. TOBEROFF:**  Yes, your Honor.

20         It has to do with the aspect of your words 'relevant     00:34

21   to the trial.'

22         Defendants have taken a very sort of self-serving

23   view.  It's in their interests to try and narrow what this

24   trial is about.  They want to narrow the trial, not only to the

25   terms of a couple agreements, but just to the financial terms    00:34

 1   of those agreements.  So when they say, 'yes, relevant to the

 2   trial,' that really should not be the measure.  It should be

 3   relevant to either the scope that you say that is --

 4          **THE COURT:**  If I was dealing with a young,

 5   fresh-out-of-law-school attorney, I would have more concerns          00:35

 6   about this, but I'm sure that all counsel in this room

 7   understand the distinction between the standard of relevancy in

 8   the discovery phase versus the standard of relevancy at the

 9   trial itself.  And I'm sure at the end of this next week,

10   counsel will make sure that anything that is discoverable, as         00:35

11   that term is used in the Federal Rules of Civil Procedure,

12   related or potentially related or likely to lead to the

13   discovery of evidence, will be produced.

14          **MR. TOBEROFF:**  I understand, your Honor.

15          May I bring up one aspect which was touched upon?              00:35

16          **THE COURT:**  Sure.

17          **MR. TOBEROFF:**  He mentioned documents which regard

18   the distribution of Smallville or Superman Returns as being

19   entirely irrelevant.

20          We've asked for -- once this television show                   00:35

21   "Smallville" is produced, they make an agreement to broadcast

22   it; and then, after they make an agreement, to put it on cable

23   and other media.  So we asked for their agreement between WBTV

24   and the WB Network which broadcasts and for the agreement with

25   the ABC Family Entertainment, and they have taken the position        00:36

 1   that it's completely irrelevant to this trial.

 2          It is not irrelevant, and I can just give you a few

 3   examples.

 4          **THE COURT:**  It may or may not be relevant in terms of

 5   being admitted at trial.  I'm not going to rule on that now.          00:36

 6   It's certainly subject to discovery, and let's have it turned

 7   over.

 8          **MR. TOBEROFF:**  Thank you, your Honor.

 9          **THE COURT:**  We have some very interesting issues to

10   take up on the 26th.  The Court believes that it will be in a          00:36

11   position to rule from the bench on all eight motions that it

12   has before it on the 26th.

13          Be prepared to argue.  I will certainly indicate at

14   the outset my tentative.  I'll look forward to seeing you on

15   January 26th.                                                          00:36

16          **THE CLERK:**  Court is in recess.

17

18                          CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the Judicial Conference of
     the United States.

23

24   _____        _____
     THERESA A. LANZA, CSR, RPR                      Date
25   Federal Official Court Reporter